EDWARD EWALD, AND THOMAS DORLAND *v.* JOHN C. CORBETT, AND JOHN C. CORBETT, ADMINISTRATOR, AND HENRIETTA CORBETT, ADMINISTRATRIX, OF THE ESTATE OF WILLIAM CORBETT, DECEASED, AND VINCENZO ZELNA.

DEED OF MARRIED WOMAN.—The deed of a married woman of her separate property which is not acknowledged in the manner prescribed by the Act of April 17th, 1850, defining the rights of husband and wife, is inoperative and void.

SEPARATE AND COMMON PROPERTY.—If a decree of divorce directs an equal division of land, the common property, and a sale of the same, and that if either party purchase at the sale his or her receipt be taken for the amount his or her due, and the former wife marries again before the sale, and becomes the purchaser, and pays a portion of the money required out of community money, that undivided proportion of the land will be common property which the community money bore to the whole price bid, and the other undivided part will be the wife's separate property.

DEED OF HUSBAND.—If an undivided part of land is common property, and the remaining undivided part is the separate property of the wife, the deed of the husband will convey only that proportion which was community property.

TENANT IN COMMON.—If an undivided portion of land is common property, and the remaining undivided part is the separate property of the wife, the grantee of the husband becomes a tenant in common with the wife or those claiming under her.

EJECTMENT BETWEEN TENANTS IN COMMON.—If the plaintiff and defendant, at the commencement of a suit in ejectment, are tenants in common in the premises, the plaintiff cannot recover possession of the entire premises to the exclusion of the defendants, nor can he recover his undivided part without proof of an ouster.

DEATH OF A PARTY ABATES ACTION.—If, after a decree of divorce which directs a division of the common property, the husband dies, a supplemental decree made after his death, without a revivor as to his heirs, directing a sale of the property and a division of the proceeds, is void as to his heirs. It is not enough that his executors are made parties in his stead.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

After the death of Harman, and before the supplemental decree in the divorce suit was made, his executors were substituted as defendants in his stead, but the children, both of whom were infants, were not made defendants or in any way brought in. The acknowledgment of the deed of Foley and wife to Brannan and others was correct, except that the notary did not insert the words " without the hearing." The

plaintiffs recovered judgment in the Court below, and the defendants appealed.

The other facts are stated in the opinion of the Court.

*R. R. Provines,* for Appellants.

On the death of Harman, Sr., the suit between himself and wife *ipso facto* terminated. The parties essential to a divorce suit, and the relation to be affected by it, no longer existed. Nor was there after that any community property to be divided. " The nature of the estate became changed (4 Cal. 273), and from community property, in which the wife had no *estate,* but a mere expectancy (*Packard* v. *Arrellanes,* 17 Cal. 538), it was turned into a tenancy in common with other persons, in which the wife's interest was no longer defeasable, or a mere expectancy, but absolute (*Beard* v. *Knox,* 5 Cal. 256)." There was, therefore, no longer anything constituting subject matter for that litigation ; the relation of husband and wife and the community of property had both ceased to exist. The cause of action for the division of the community property could no more survive than that for divorce. The action, therefore, inevitably abated. Story (Eq. Pl., Sec. 356,) says : " But if the party so dying be the only plaintiff or only defendant, there will necessarily be an abatement of the suit, if there is no subject of litigation remaining."

The heirs could not be deprived of their property without due process of law (Const. Art. I, Sec. 8) ; and that certainly cannot be regarded as due process of law, in which the parties to be affected were in no way represented and had no opportunity of being heard. (*Skinner* v. *Buck,* 20 Cal. 256–7.) Not having had the opportunity of being heard their estate in the land remained as it was before the proceedings for partitition and sale were had, wholly unaffected by the decree. (*Goodenow* v. *Ewer,* 16 Cal. 468–9 ; *Burton* v. *Lies,* 21 Cal. 61 ; Story's Eq. Pl. Secs. 328, 329, 331, 354, 354*a,* and 369 ; *Reynolds* v. *Reynolds,* 5 Paige, 161.) The estate did not vest in the executors, but in the devisees, subject only to the lien of the executors for the·payment of debts. The executors did

not in that case, and could not, represent the heirs or devisees. (*Beckett* v. *Selover*, 7 Cal. 238–9 ; *Updegraff* v. *Trask*, 18 Cal. 459 ; *Burton* v. *Lies*, 21 Cal. 61.

*B. S. Brooks*, for Respondents.

The first proposition of the appellants' counsel is, that upon the death of Mr. Harman, the suit between himself and wife *ipso facto* terminated. If there was any suit pending I presume such would be the effect; and the question to be considered is, whether there was any suit pending, and if so, what? A *final judgment* was rendered in the Court of First Instance, on the 24th day of October, 1849, in accordance with the prayer of the complaint decreeing a divorce and partition of assets. That ended the suit. There was no longer any suit pending, for the suit ends with the entry of final judgment; what comes after that is *execution*. The rights of the parties had been tried and determined, and the judgment of the Court had been rendered. The gist of the action was the dissolution of the marriage contract; the division of the assets only followed as an incident or necessary consequence. There was no necessity of reviving the suit because it had not abated. The District Court had jurisdiction to proceed to execute the judgment without any revival or change of parties. The case of *Nagle* v. *Macy*, 9 Cal. 429, seems to me to be a case directly in point. In that case the Supreme Court say :

" It is insisted that the sale is void because made *after the death of the mortgagor.* The decree is not set forth in the record, but it is presumed to be in the regular form, directing a sale of the premises, and application of the proceeds to the payment of the debt, a deposit in Court of any surplus and execution for any deficiency. *The Court had jurisdiction of the subject and the parties.* The mortgage was a specific lien on the premises, and the *decree directs their sale for its satisfaction.*

" The suit to foreclose a mortgage is in the nature of a pro-

ceeding *in rem* (16 Ohio, 141.)   *The decree binds the specific property*, and the case is within the reason of the proviso in the one hundred and forty-first section of the Act relating to the estates of deceased persons, (Compiled Laws, 396,) and we do not think it was necessary to revive the decree by a bill or by a proceeding in the nature of *scire facias* (Milford's Ch. Plead. 69.)

" But, admitting the sale was irregularly made, without a revival of the decree it is not void but only voidable.   It is good until regularly set aside, and the title of the purchaser under it cannot be impeached in this collateral action for any irregularity in the proceedings.   (*Jackson* v. *Bartlett*, 8 Johns. 361 ; *Jackson* v. *Robins*, 16 Johns. 576.)"

By the Court, Shafter, J. :

Ejectment for lands in San Francisco, they being parcel of a larger tract known as the " Harman Tract."   The appeal is from the judgment and order overruling the defendants' motion for a new trial.   The only question raised is as to the plaintiffs' title and right of entry.

The case shows, amongst other things, that " Jacob Harman died actually seized and possessed of the demanded premises as community property, on the 3d day of November, 1850, leaving him surviving his wife Elenora Harman, and two children, Mary Ann Harman, aged about seven years, and Jacob Harman, Jr., aged about four years."   That Harman left a will wherein he devised two thirds of his estate to his said son, and one third to his said daughter.   That letters testamentary duly issued to his executors, Hayes and Corbett, on the 17th of December, 1850.   That Mrs. Harman, on the 20th of November, 1850, seventeen days after her husband's death, intermarried with one Michael Foley, and that she died intestate in the year 1860, and that her said son, Jacob Harman, Jr., also died intestate during the same year, leaving neither wife nor descendants.   The plaintiff, Ewald, claims the whole of the demanded premises through a

deed executed by Foley and wife to Brannan and others on the 27th of June, 1853; and the defendants claim under Mary Ann Harman as devisee of her father and sole heir at law of her mother and brother.

First—There is no question that Mrs. Foley, at the time she joined with her husband in the deed to Brannan and others, was the owner of at least one half of the premises in her own right; but the plaintiff, Ewald, claims that she owned the whole in severalty by virtue of a deed executed to her by certain Commissioners as purchaser at a sale made by them in pursuance of a decree duly entered in the Court of First Instance, October 24th, 1849, divorcing Mrs. Harman from her then husband, and directing an equal division of the common property; which decree was thereafter supplemented by an order, passed March 12th, 1851, directing the decree to be executed by a sale of the property and division of the proceeds. The defendants dispute the validity of this deed, claiming that nothing passed by it to the purchaser. So far as this appeal is concerned, however, it is not necessary to determine whether Mrs. Foley, at the date of the deed of herself and husband to Brannan and others, owned the premises in severalty as against her children, as claimed by the plaintiff, or only an undivided half thereof, as claimed by the defendants; for the deed referred to was inoperative and void, inasmuch as it was not acknowledged by Mrs. Foley in the manner prescribed by the Act defining the rights of husband and wife, passed on the 17th of April, 1850. Though the deed is void considered as a conveyance by the wife of her separate property, it is claimed that inasmuch as the deed of the Commissioners to Mrs. Foley purports to have been made upon a money consideration, the intendment must be, in the absence of all showing to the contrary, that the lot was paid for with money belonging to herself and her husband, Foley, in community; and that the lot is to be considered as the common property of Mr. and Mrs. Foley by consequence, and that the title therefore passed by the deed in

question considered as the several deed of the husband. The reasoning is unobjectionable, but it remains to be determined whether the assumption of fact upon which it proceeds is borne out by the record. We consider that it is not.

It was ordered by the supplemental decree that in case either of the parties should bid in the premises at the sale, that their receipts for the amounts due them by the decree, should be received by the Commissioners as so much money paid. It appears by the decree that Harman was adjudged to be indebted to his wife in the sum of one thousand three hundred and fifty-four dollars " on account of his having had the benefit of the sale and use of the common property to that amount," and the same was made a specific lien on the property. The land was bid in by Mrs. Harman at the sale at four thousand dollars. As one half of that amount belonged to her as part owner of the land sold, and as she was entitled to one thousand three hundred and fifty-four dollars more as creditor of Harman, having a lien on the property sold, making three thousand three hundred and fifty-four dollars in the whole, it is to be presumed that the Commissioners took " her receipt therefor as so much money paid," according to the direction given in the decree. To that extent, then, it is demonstrated by the record that the bid of the woman was not paid with the money belonging to herself and Foley in community, and it is therefore demonstrated that she took at least three thousand three hundred and fifty-four four thousanths of the property in her own right. Should it be conceded, for the purposes of argument, that the balance of the purchase money (six hundred and forty-six dollars) must be intended to have been paid out of community money by Foley and wife, and that the community therefore owned six hundred and forty-six four thousanths of the land, then the deed to Brannan and others, considered as the deed of Foley, could have passed that fractional interest only to the grantees, and the residue of the title and interest held by Mrs. Foley as her separate property, being unaffected by the deed, must have passed by descent at her death to her daughter

under whom the defendants claim.   This view places the plaintiff Ewald and the defendants in the relation of tenants in common at the commencement of the action, and shows that the judgment is eroneous in that, according to its terms, the plaintiffs recover the possession in severalty of the premises demanded to the exclusion of the defendants, and also for the reason that there is no evidence in the case tending to prove that the plaintiffs were ousted by the defendants, considering the parties as standing to each other in the relation of tenants in common.

Second—The supplemental decree in the divorce suit, under which the plaintiff claims to be the owner of the whole land sued for, was, in our judgment, null and void as against the heirs at law of Harman.   By the death of Harman the suit abated for all the purposes of further judicial action therein on the subject of partitioning the common property, and the Court had no jurisdiction to adjudge that the property should be sold and the proceeds divided without a revivor as to the heirs.   No such revivor was had, and the interests of the heirs were therefore unaffected by the supplemental decree, and the transactions under it.

We have been unable to discover any evidence in the case tending to prove title in the plaintiffs or in either of them under the Van Ness Ordinance, or under the Statute of Limitations.

Judgment reversed and a new trial ordered.

Mr. Justice SANDERSON did not express any opinion.