[No. 2,081.]

THOMAS G. McLERAN v. J. E. BENTON, J. PURRINGTON, FRANCES PURRINGTON, his WIFE, EGBERT JUDSON, JAMES L. KING, J. JUDSON, Mrs. J. JUDSON, his WIFE, ROBERT B. WOODWARD, AND TERRENCE RILEY.

CERTIFICATE OF ACKNOWLEDGMENT OF A DEED.—If the certificate of acknowledgment of a deed of a married woman for her separate property, does not state that she was examined by the Notary without the hearing of her husband, and that she was made acquainted with the contents of the instrument, it is radically defective and does not convey any title.

POSSESSORY RIGHT IN PUEBLO LANDS.—The right or interest which a person held in the pueblo lands of San Francisco, by virtue of possession alone, prior to the passage of the Van Ness Ordinance, if not devised by him, descended to his heirs and could be distributed by the Probate Court.

ASSIGNMENT OF LEASE BY LESSEE.—An assignment made on a lease of land, of all the tenant's right, title, and interest in the premises held under the lease, is not a surrender of the lease to the person to whom the assignment is made, nor does it amount to an attornment to him, unless he has purchased the title from the lessor, but such assignment makes the assignee the tenant of the lessor.

VAN NESS ORDINANCE.—The actual possession of land in San Francisco within the boundaries of the Van Ness Ordinance, by a tenant, was the possession of the landlord, so as to entitle him to the benefits of that ordinance, and the same result followed if the tenant assigned the lease, and his assignee took possession.

Aʙᴀɴᴅᴏɴᴍᴇɴᴛ ᴏꜰ Lᴀɴᴅ.—An attempted sale of land which fails, because of a defect in the deed, is not an abandonment of the land. There cannot be an abandonment to a particular person or for a consideration.

Gᴏᴏᴅ Fᴀɪᴛʜ ɪɴ Pᴜʀᴄʜᴀsᴇ ᴏꜰ Lᴀɴᴅ.—When a mother and her children own land in common, a purchaser from the mother in good faith, who buys supposing he has acquired the whole title, does not.acquire the title of the children. The title of the children cannot be affected by the good faith of a purchaser from the mother.

Aᴘᴘᴇᴀʟ from the District Court of the Fourth Judicial District, City and County of San Francisco.

The facts are stated in the opinion.

*B. S. Brooks,* for Appellant.

Jacob Harmon being in the actual possession of the land in controversy, and claiming to own the same, at the time of his death, the right to the possession of the same descended to his legal representatives, the same as the legal title would have done, and passed by his will as effectually as an absolute title, as against the defendants and all the world, except the lawful owner; and even as to the lawful owner the possession passed by the will.

"The right of enjoyment of possession of public lands may descend among the effects of a deceased person to the executor or administrator, and the right of the deceased may be conveyed by regular sale to another." (*Grover* v. *Hawley,* 5 Cal. 485; 2 Black. Com. 159; 2 Hil. on Real Prop. 155, 156; *Smith ex dem. Teller* v. *Lorillard,* 10 Johns. 355.)

By the decree of divorce Jacob Harmon and Eleonora Harmon became tenants in common of the land. (*Ewald* v. *Corbett,* 32 Cal. 493; *McLeran* v. *Benton,* 31 Cal. 29.) By the death of Harmon, Eleonora Harmon had one half of the said land, Jacob Harmon, Jr., one third, and Mary Ann Harmon one sixth.

The deed from Mrs. Foley, not being acknowledged by her as required by law, was a nullity, and, therefore, it con-

veyed nothing; therefore, the title to the land remained as before. (*Ewald* v. *Corbett*, ante.) The possession of Mrs. Foley was the possession of all her tenants in common. (*Warring* v. *Cross*, 11 Cal. 366.) The attornment made by Commerford to Brannan and others, being without the consent of his landlord, was void at law. (1 Hittell's Dig. 691.) The assignment made by Commerford to Brannan and others, and the entry by Brannan and his associates, placed them in the shoes of Commerford, and they became tenants of the heirs of Harmon. (1 Hittell's Dig. 690.) Harmon was not, nor were his successors in interest, trespassers upon the lands of the pueblo. The pueblo did not hold these lands in absolute fee, but in trust for those who should come to settle upon them. (*Hart* v. *Burnett*, 15 Cal. 530; *Fulton* v. *Hanlon*, 20 Cal. 450; *Payne et al.* v. *Treadwell*, 16 Cal. 220; *Coryell* v. *Cain*, 16 Cal. 567; *Doran* v. *C. P. R. R. Co.*, 24 Cal. 245; *Houseman* v. *Chase*, 12 Cal. 290.) Michael Commerford, the lessee of Mrs. Foley, being in possession on the 1st day of January, A. D. 1855, and up to the passage of the Van Ness Ordinance, the title of the pueblo, if it had not already passed, then passed to Harmon's legal representatives. (*Hubbard* v. *Barry*, 21 Cal. 321; *Board Education* v. *Fowler*, 19 Cal. 11; *Hubbard* v. *Sullivan*, 18 Cal. 108.)

*W. H. Patterson*, for Respondents.

The legal question which counsel for appellant seeks to raise upon what he claims to be the legitimate facts, viz: "That the ancestor, Jacob Harmon, being in possession of the land in 1849–50, and up to the time of his death, was presumptively the owner of the land, and that his possessory title descends to the heir at law," is entirely foreclosed by the fact that the land was the property of the pueblo, and that subsequent to his death, on the passage of the Van Ness Ordinance, the title in fee became, and was vested in the defendants, as actual possessors and occupants. There-

fore, it is unnecessary to discuss the proposition; for so soon as the evidence disclosed the fact that the legal title to the land was in the Pueblo of San Francisco, the Court was called upon to declare that the possession of Harmon was a mere naked possession, and, in the absence of proof to establish that he held under some authority or consent of the city, he was to be regarded as a mere trespasser. But it is unnecessary to characterize his possession at all. It is sufficient that the land was subject to the disposition which the Van Ness Ordinance made of it. ( *Wolf* v. *Baldwin*, 19 Cal. 306; *Davis* v. *Perley*, 30 Cal. 630; *Borel* v. *Rollins*, 30 Cal. 408; *Wakelee* v. *Goodrum*, 34 Cal.)

*W. H. Patterson* and *J. W. Winans*, also for Appellant.

The deed of Eleonora Harmon and husband was valid, because their right to convey to Brannan and others was not affected by the Act of April 17th, 1850, respecting husband and wife, nor by the Act of April 16th, 1850, respecting conveyances, inasmuch as her separate estate in the property was acquired before the adoption of the State Constitution and laws. Her deed, therefore, to make it valid, did not require to be acknowledged in conformity with the requirements of said Acts. (*Bodley* v. *Ferguson*, 30 Cal. 511.)

By the Court, Rhodes, J.:

This is an action of ejectment to recover the possession of lands in San Francisco, lying within the lines of the Van Ness Ordinance. It is found, among other facts, that prior to September 13th, 1849, Jacob Harmon and Eleonora, his wife, were in the actual possession, use, and occupation of a tract of land known as the Harmon tract; and that they so took and held possession thereof after coverture, and resided thereon with their family. Harmon and wife were divorced

by a decree of the Court of First Instance which was ren-
dered October, 1849, and affirmed in 1850 by the Supreme
Court. By the decree it was adjudged that Eleonora was
entitled to the one half of the community property; but it
does not appear that a partition thereof was ever made. In
November, 1850, Harmon died, leaving a last will and testa-
ment, by which he devised the undivided two thirds of the
land to his son Jacob, and the remaining third to his execu-
tors in trust for his daughter Mary Ann. Soon after the
divorce, Eleonora married Michael Foley, and in 1850 they
entered into possession of the land; and on the 16th of
August, 1852, they executed a lease of the land to Commer-
ford, for a term to expire January 16th, 1856, describing the
land as a part of the Harmon estate. Immediately after the
execution of the lease, Foley and wife removed from the
land, and Commerford entered and occupied, under the
lease. In June, 1853, Foley and wife entered into a con-
tract in writing with Brannan and others—under whom
defendants claim title—by which Foley and wife agreed to
sell and convey to Brannan and others one hundred and
sixty acres of the Harmon tract; and in the same month
the purchase money, six thousand dollars, was paid, and
Foley and wife executed to them a deed for the land. The
contract and deed will hereafter be alluded to. In Decem-
ber, 1853, Commerford sold and assigned his lease to Brannan
and others, but he remained as the tenant of Brannan and
others until October, 1854, and for the period of ten months
thereafter he remained on the premises as their agent or
servant. In 1854 Mrs. Foley, with her two children, Mary
Ann and Jacob Harmon, removed to the County of Santa
Clara, and thereafter neither she nor the children had pos-
session of the premises. In October, 1859, Jacob died, a
minor and unmarried, and in November, 1859, Mrs. Foley,
his mother, died. In May, 1861, Mary Ann, who before
that time had married Roussel, conveyed the premises to

the plaintiff. From the time when Commerford relinquished the possession of the premises, the defendants and those under whom they claim, through the deed to Brannan and others, have been in the actual occupation of the premises in controversy. The defendants had judgment. The appeal is taken from the judgment and the order denying the plaintiff's motion for a new trial.

The question of the sufficiency of the deed of Mr. and Mrs. Foley to Brannan and others was before the Court in *Ewald* v. *Corbett*, 32 Cal. 493; and it was there held that Mrs. Foley was at that time the owner of one half of the premises as her separate property, and that the deed was inoperative and void as to her, because of the defective acknowledgment. It is not certified therein that she was examined by the Notary without the hearing of her husband, nor that she was, by the Notary, made acquainted with the contents of the instrument. In each of those respects the acknowledgment is radically defective. The decision in *Ewald* v. *Corbett* is fully sustained by numerous decisions of this Court, and we are satisfied beyond a doubt of its correctness. We expressly affirm that case on this point, because the Judge of the District Court, after having excluded the deed when offered in evidence, stated when he came to the decision of the cause, that he excluded from consideration both the agreement and the deed, though he was of the opinion that the decision of that point in *Ewald* v. *Corbett* was incorrect.

The real controversy in the case, is in respect to the title accruing by virtue of the Van Ness Ordinance. The plaintiff claims that it accrued to Mrs. Foley and her two children, Mary Ann and Jacob; and the defendants claim that it accrued to Brannan and the other persons who united with him in the purchase from Mrs. Foley and her husband. Jacob Harmon was in the actual occupation of the premises in 1849. The undivided half of the premises—that is to

say, the undivided half of the interest therein, which Harmon and wife held immediately preceding his death—vested in Eleonora, either by virtue of the decree of divorce, or the statute of this State providing for the distribution of the common property upon the dissolution of the community by the death of the husband; and the remaining half vested in their two children, but whether by virtue of the will of their father or the statute regulating the distribution of common property, it is unnecessary to determine. That the right and interest in the premises acquired or held by Harmon by virtue of his possession, conceding that they were the lands of the pueblo or the city, would descend to his heirs, if not devised by him, and that the same might be distributed under the statute relating to common property, is beyond all controversy. The decision on the former appeal, and in *Ewald* v. *Corbett*, would be destitute of all basis if the estate of Jacob Harmon would not descend, or could not be distributed under the statute regulating common property. The rule, in case the title was in the city or the former pueblo, is the same as when the title is in the United States; and this is so thoroughly settled in this State that it is quite useless for counsel to reopen the discussion of the question.

Mrs. Foley and her husband had the actual possession and occupation of the premises from the time of her entry, in 1850, up to their execution of the lease to Commerford in August, 1852. Whether her possession was also the actual possession of her children, is not material to the points necessarily involved in the case.

Both parties treat the lease to Commerford as valid. It is hence unnecessary to determine whether, between his entry and his assignment of the lease, he was either a trespasser or an intruder within the meaning of the Van Ness Ordinance. Up to the time of his assignment of the lease, De-

cember, 1853, he was Mrs. Foley's tenant, and up to that time all her rights in the premises were fully preserved.

By the instrument executed by Commerford to Brannan and his associates, he purported to "assign, transfer, and surrender" to Brannan and his associates "all my right, title, and interest in the said premises, under and by virtue of the within lease," and he recited therein that Brannan and his associates had become the owners of the premises by purchase. The inquiry here arises—and it is the most important question in the case—as to the legal effect of that instrument. It was not a surrender, unless Brannan and others had become the landlords of Commerford. It is not pretended that they became such, except by purchase from Mrs. Foley. Her deed being invalid, and having been excluded when offered in evidence, there is nothing to show that they acquired the legal title from her. The contract of sale, which, as already stated, was excluded from consideration by the Court below, whether valid or not, under the law then in force, did not convey, or purport to convey, the title; and if it be valid, and the equitable title was acquired thereby, and by means of the payment of the sum of six thousand dollars by Brannan and others to Foley and wife, such equitable title has not been set up in the action. It requires no argument to show that a parol contract of sale, accompanied by the payment of the purchase money, does not transfer the title. For the reasons already suggested, the instrument executed by Commerford did not amount to an attornment to Brannan and others. His alleged holding under them, from the date of the instrument to October, 1854, may have made him, as between themselves, the tenant of Brannan and others; but that fact did not in any manner vary the effect of that instrument, or change the relation subsisting between Mrs. Foley on the one side and Brannan and others and Commerford on the other. That instrument, in our judgment, amounts in legal effect to an assignment of

the lease. Brannan and others, therefore, became the tenants of Mrs. Foley, and so remained during the residue of the term, which expired January 16th, 1856. From the assignment of the case to October, 1854, Commerford was the sub-tenant of Brannan and others; and for the succeeding ten months he had charge of the premises as their agent or servant.

There seems to be no question that on the 1st of January, 1855, and from thence to the 20th of June, 1855, there was the requisite actual occupation of the premises to entitle Mrs. Foley, or Brannan and others, to the benefits of the Van Ness Ordinance. Had Commerford remained in possession under the lease, without an assignment of the lease, it is beyond all question that the title, which passed under the operation of the Van Ness Ordinance, and its confirmation by the Legislature in 1858, would have vested in Mrs. Foley; and as Brannan and others, by the assignment of the lease, became the tenants in the place of Commerford, the same result ensued, as there would, had there been no assignment of the lease—that is to say, the title vested in Mrs. Foley. We do not mean to be understood as holding that the title vested in her to the exclusion of her children, but we hold that, to the extent of her interest in the premises, growing out of the possession of Harmon and herself, the decree of divorce, her subsequent possession, and the possession of her tenants, the title vested in her. We deem it unnecessary for the purposes of this case to determine whether Mary Ann and Jacob occupied such a position in respect to the premises as to entitle them to the benefits of the ordinance; because, according to the views already expressed, either Mrs. Foley took the entire title, or she took it in common with her two children; and if the latter took any portion of the title the defendants have not connected themselves with it.

Great reliance is placed by the defendants upon an intima-

tion which was thrown out in *Brooks* v. *Hyde,* 37 Cal. 374, that the word *tenant* is used in the ordinance and the statute (Stats. 1858, p. 52,) as meaning a *conventional* tenant. But without discussing that intimation or inquiring whether it was intended by the ordinance to exclude cases where the vendor remained in possession, neither by contract nor adversely to the vendee, or where a purchaser had been let into possession pending the treaty of purchase, or held possession under a contract to purchase, after having made default in payment; or where an executor, administrator, or receiver, etc., held the possession, or where the mortgagee was in possession, or other cases of that complexion, it needs only to be said here, that the assignee of the term becomes, by force of the assignment, the tenant of the landlord, and as such falls within the meaning of the word *tenant,* as used in the ordinance.

It is contended that the attempted sale and conveyance by Mrs. Foley to Brannan and others may be regarded as an abandonment by her of the possession of the premises. The elements of an abandonment are quite different from those of a sale; and where for any reason a transaction fails, as a sale, it cannot be converted into an abandonment. There is no such thing as an abandonment to particular persons, or for a consideration. (*Stevens* v. *Mansfield,* 11 Cal. 365; *Richardson* v. *McNulty,* 24 Cal. 343.)

It is insisted by the defendants that Brannan and others effected their purchase from Mrs. Foley, and paid the purchase money in entire good faith; and it may be admitted that they had no actual knowledge that they were not obtaining the title. But the papers which the parties executed, showed that the premises were a portion of the Harmon estate; and had there been nothing to put them on inquiry as to the title, it is apparent that Mrs. Foley had not competent power to convey the interests of her children. They, of course, cannot be affected by the utmost good faith on the

part of the purchasers from their mother. Neither has the question of good faith anything to do with their purchase, so far as the interest of Mrs. Foley is concerned, for the most perfect good faith on their part will not help out or cure the radically defective acknowledgment of her deed.

Judgment and order reversed, and cause remanded for a new trial.

Mr. Chief Justice WALLACE, being disqualified, did not sit in this case.

Mr. Justice CROCKETT did not express an opinion.