[No. 9220.  In Bank. — September 1, 1887.]

THOMAS  G.  McLERAN,  Appellant,  v.  JOHN  E. BENTON et al., Respondents.

Stare Decisis — Law of Case — Lease — Assumption of Legality of. — Where on the prior trials of an action of ejectment a lease purporting to be made by a married woman is introduced in evidence without question as to its validity, and on appeals taken therein is assumed by the court as valid and creating a term of years, the decisions on the former appeals do not establish the law of the case as to the effect of the lease, so as to prevent the lower court, on a subsequent trial, from holding it invalid for want of a proper acknowledgment.

Landlord and Tenant — Entry under Void Lease — Tenancy at Will — Assignment of — Tenancy at Sufferance — Termination of Estate. — Where an instrument executed by a married woman, purporting to be a lease for a term of years, is void for want of a proper acknowledgment, the entry of the tenant thereunder into the demised property, with the consent of the lessor, creates a mere tenancy at will between them, which is terminable at the instance of the lessor. Under such circumstances, the tenant at will cannot assign the term named in the lease; if he attempts to do so, he thereby terminates his estate, and his assignee, upon entering without the consent of the lessor, becomes merely a tenant at sufferance; and if after such an attempted assignment by the tenant at will the lessor conveys the demised property to the tenant at sufferance, all privity or relationship between them is destroyed.

Van Ness Ordinance — Prior Possession — Action against Intruder — Statute of Limitations. — A person who was in the prior possession of land in the city and county of San Francisco, within the limits affected by the Van Ness ordinance, but who was ousted by an intruder before the ordinance took effect, in order to acquire the ordinance title, must recover possession from the intruder by virtue of his prior possession, in a suit commenced before his right of action on his prior possession is barred by the statute of limitations. He cannot recover from such intruder by virtue of any title vested in him by the ordinance.

Statute of Limitations — Estate of Decedent — Bar of Executor Bars Heir or Devisee. — Under the statutes of California in force in 1862, determining the rights of minors in the property of the estates of deceased persons, where the executor or administrator of the estate neglects to bring an action to recover real property of the estate until his right of action is barred under the statute of limitations, the heir or devisee is also barred, even though he be a minor at the time the action accrues to the executor or administrator.

Id. — Disability of Heir or Devisee. — Where a person in whose favor a cause of action for the recovery of real estate exists, and who is under no disability, dies, the statute of limitations does not cease running against those to whom the property is devised or descends, notwithstanding their disability at that time.

Appeal from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The action was commenced on the 4th of June, 1862, to recover the possession of a tract of land in the city and county of San Francisco. The following is an epitome of the history of the case, and of the facts as found by the court: In 1849 Jacob Harmon and wife, Eleonora, entered into possession of a tract of land embracing the land in controversy, which consists of separate parcels lying in what is now a populous portion of the city of San Francisco, and generally known as "Woodward's Garden," "Benton's Church," and "Judson and Shepard's Acid Factory." The lands are within the boundaries of the territory described in the Van Ness ordinance. (See Stats. 1858, pp. 52 et seq.) Harmon continued in the actual occupation thereof until the time of his death, November, 1850. Eleonora was divorced from Jacob in 1849, and by the decree was awarded an undivided half of the property. Jacob appealed from the judgment. Pending the appeal he died testate, and his executors were substituted as parties. To his son, Jacob, Jr., then five years of age, he bequeathed two undivided thirds of his property, and appointed the executors to be guardians of said Jacob, Jr. To his daughter (there were but two children) he gave the remaining one third when she arrived at the age of eighteen, if her conduct satisfied the executors, and with the proviso: "If it should so happen that her conduct should not be entirely unexceptionable, yet not lost to every sense of propriety, in that case it is my will and desire that my executors should relieve her urgent wants and necessities, but in no case to give her more than one third of my entire property. And if she should fail to comply with the conditions which I have imposed upon her, then and in that case I give the remaining one third to my son, Jacob, Jr."

The decree referred to was affirmed by this court (*Harman* v. *Harman*, 1 Cal. 215), and by proceedings afterwards had in the court below the lands were sold at auction, by commissioners therefor appointed by the court, on March 28, 1851. At the sale, Eleonora was the highest bidder, and upon payment to the commissioners, they conveyed the land to her. The children were not made parties. Eleonora and her husband, Michael Foley, — to whom she was married November 20, 1852, — were put into possession under orders from the court, and the executors never afterwards occupied or claimed the property. An inventory, acknowledged by Foley and wife, was filed May 31, 1852, in which all of the lands in controversy are described as the separate property of Mrs. Foley. In September, 1851, Michael Comerford went into possession, under a parol agreement with Foley and wife to cultivate the lands on shares, and remained in possession thereunder until August 16, 1852, when Foley and wife and Comerford executed an instrument in the form of a lease to said Comerford, from said sixteenth day of August, 1852, to the sixteenth day of January, 1856, at the monthly rental of $83.75. This instrument was never acknowledged by any of the parties to it, but was recorded August 24, 1852. Comerford continued in possession under and by virtue of the lease until January 27, 1853. The court found as a fact that during this last-named period Comerford was a tenant at will of Foley and wi        th parties having treated it at the trial as void, and            missible at all, only to show the character of Co holding. On the eighteenth day of June, 1853, Fo and wife entered into a written agreement with Brannan and others, whereby they agreed to sell to the latter all of the lands, and assigned the lease, in consideration of six thousand dollars. Brannan & Co. paid Foley and wife one hundred dollars in consideration of the agreement, but it was understood and agreed that the convey-

ance was to be only in the event that satisfactory arrangements should be made with Comerford to deliver the possession to Brannan & Co. Interviews were had with Comerford by Foley and wife and Brannan & Co., which resulted in an assignment by him of all interest which he held under the instrument, which they all regarded as a valid lease; and on the termination of Comerford's tenancy, and his surrender of possession to Brannan & Co., in consideration of five thousand dollars, which they paid, Comerford was allowed to gather his crop, then growing, which was done prior to December, 1853, and from that time until October, 1855, the court finds that said Comerford was a care-taker and bailiff in the employ of Brannan & Co.

As to those portions of the lands claimed by defendants Benton, Judson, and Woodward, however, said defendants were let into possession in 1854, under deeds from Brannan & Co. conveying them severally in fee-simple. On June 27, 1853, Brannan & Co. paid to Eleonora personally the balance of the six thousand dollars purchase price; and in pursuance of their agreement with Brannan & Co., Foley and wife attempted to convey the lands to Brannan & Co. by deed, but the deed was not acknowledged so as to constitute it a valid conveyance by Mrs. Foley, and it is admitted that it is void. The court found that " said defendants Benton, Judson, and Woodward, ever since their entry into possession in        have been severally and respectively in the a        ntinuous, exclusive, and adverse possession,         he same against all the world, of the several      cels described in their answer, claiming the same under said conveyances in good faith, and having paid a valuable consideration therefor, and as early as 1854 made and have since continued to make large and valuable improvements thereon. . . . . That such possession was continued without interruption ever since, and that they held and continued during all of said time in pos-

session of said premises without any trespass or intrusion by any person or persons whatsoever."

Kitty Foley, daughter and only surviving child of Eleonora and Michael, was born July 8, 1853. Jacob, Jr., died unmarried and intestate in October, 1859, and Eleonora, his mother, died intestate in November following. Prior to her death she married (in 1859) one James Holmes, who survived her. Mary Ann Harmon was married to Peter Roussel, and afterwards, to wit, on May 21, 1861, said Mary Ann and Peter conveyed the lands in controversy to plaintiff in consideration of ten dollars, provided, however, that the undivided half of all lands which he, said plaintiff, might recover under said deed by virtue of proceedings he agreed to prosecute at his own expense, should be by him conveyed to said Mary Ann. In 1854 Eleonora and her children, Mary Ann, Jacob, and Kitty, removed to Santa Clara County, where Foley died the same year, and they did not have the actual possession any time thereafter. Plaintiff proved no other deraignment of title or right to the possession than his said deed from Mary Ann and Peter.

The court below found as conclusion of law that the defendants were the owners in fee, and gave judgment for them accordingly.

The so-called Van Ness ordinance was introduced into the common council of the city of San Francisco on the 20th of June, 1855, and was subsequently approved and ratified by the act of the legislature of March 11, 1858. Afterwards, Congress, on the 1st of July, 1864, passed an act relinquishing and granting to the city of San Francisco and its successors all the right and title of the United States to the land within the city limits, for the uses and purposes specified in the ordinance as ratified by the act of the legislature of March 11, 1858. By the ordinance the city granted and relinquished its title to certain lands within its limits, including the land in controversy, to the persons in actual possession of the

land on or before January 1, 1855, " provided such possession has been continued up to the time of the introduction of this ordinance in the common council, or if interrupted by an intruder or trespasser, has been or may be recovered by legal process." The further facts are stated in the opinion of the court.

*A. L. Rhodes,* for Appellant.

Mrs. Foley, either on the death of her husband or by virtue of the decree of divorce, took only the undivided half of the premises in controversy, and the other half remained in her children as tenants in common. This tenancy was not disturbed by the attempted sale by the commissioners appointed in the divorce action. (*McLeran* v. *Benton,* 31 Cal. 29; S. C., 43 Cal. 468.) Her possession was therefore the possession of her children, and the attempted lease to and the entry of Comerford were in no sense an ouster of the children. (*Broad* v. *Broad,* 40 Cal. 493.) The entry of Comerford under the void lease, with the consent of Mrs. Foley, and the delivery of the possession by her to him, made him a tenant at will. (*Jackson* v. *Andrews,* 7 Wend. 156; *Livingston* v. *Peru etc. Co.,* 9 Wend. 511; *Jackson* v. *French,* 3 Wend. 337.) By parity of reasoning, the entry of Brannan and his associates, under the void deed from Foley and wife, and under the assignment of the void lease by Comerford, being made with the consent of Mrs. Foley, constituted Brannan and his associates tenants at will of Mrs. Foley. Their possession was therefore her possession, within the meaning of section 2 of the Van Ness ordinance, and such possession inured to the benefit of her children as tenants in common. While holding as such tenants, neither Comerford nor Brannan and his associates could deny the title of Mrs. Foley. If they, or the defendants who purchased from them and entered under them, held adversely, they were, within the meaning of the proviso to section 2 of the ordinance,

trespassers, and both Mrs. Foley and her children could have recovered the possession by legal process, that is to say, by action of ejectment. (*Valentine* v. *Mahoney*, 37 Cal. 397; *Davis* v. *Perley*, 30 Cal. 630; *Pickett* v. *Hastings*, 47 Cal. 285.) If either of the defendants held adversely, Mrs. Foley had five years after their entry, in the latter part of 1854, in which to commence her action for the recovery of the possession; and that period not having expired in June, 1855, brings her within the saving clause of the proviso to the second section of the act of 1858. Her children had five years after the removal of their disabilities in which to commence an action, and that would give them until long after the time of the commencement of this action. The statute of limitations, however, did not commence to run against the Van Ness ordinance title until sixty days after the passage of the act of March 11, 1858, ratifying the ordinance.

*Wilson & Wilson*, and *S. M. Wilson*, for Respondents.

The lease to Comerford, together with his entry thereunder, created a mere tenancy at will in him. (Taylor's Landlord and Tenant, sec. 19; *Digby* v. *Atkinson*, 4 Camp. 275; *Denn* v. *Fearnside*, 1 Wils. 176; *Doe* v. *Watts*, 7 Term Rep. 83; *Crommelin* v. *Thiess*, 31 Ala., N. S., 418.) The transactions had between the Foleys and Comerford and Brannan and his associates operated to transfer the possession of the former to the latter for the period requisite to give title under the Van Ness ordinance. (*Gage* v. *Gage*, 30 N. H. 425.) They did not thereby become tenants of Mrs. Foley. She died in 1859, without ever claiming the land, or pretending that the defendants' grantors were tenants of hers. This was a clear abandonment of all possession and claim to possession. (*Whitney* v. *Wright*, 15 Wend. 177; *Gluckauf* v. *Reed*, 22 Cal. 468; *Lawrence* v. *Fulton*, 19 Cal. 683; *Smith* v. *Lorillard*, 10 Johns. 356; *Jackson* v. *Denn*, 5 Cow. 201;

*School District* v. *Benson*, 31 Me. 385; *Moore* v. *Small*, 9 Pa. St. 194.) The defendants were holding the possession for themselves, and adversely to the Foleys, on the 1st of January, 1855, and so on till after the 20th of June, 1855, and were not tenants of the Foleys. The Foleys, therefore, not being in possession by themselves, or any tenant or assignee of a tenant, did not get the benefit of the Van Ness ordinance. (*Pickett* v. *Hastings*, 47 Cal. 283; *Polack* v. *McGrath*, 32 Cal. 18; S. C., 38 Cal. 667; *Davis* v. *Perley*, 30 Cal. 643; *Wolf* v. *Baldwin*, 19 Cal. 316; *Sumner* v. *Stevens*, 6 Met. 338; Angell on Limitations, sec. 407; *South School District* v. *Blakeslee*, 13 Conn. 235; *Griswold* v. *Butler*, 3 Conn. 246; *Moore* v. *Webb*, 2 B. Mon. 283.) The decisions on the former appeals in this case, assuming the validity of the lease to Comerford, do not establish the law of the case on this appeal. (*Leese* v. *Clark*, 20 Cal. 418; *Nieto* v. *Carpenter*, 21 Cal. 483; *Mitchell* v. *Davis*, 23 Cal. 381; *Trinity Co.* v. *McCammon*, 25 Cal. 121; *Page* v. *Fowler*, 28 Cal. 607; S. C., 37 Cal. 105; *McKinlay* v. *Tuttle*, 42 Cal. 576; *Dodge* v. *Gaylord*, 53 Ind. 365.)

PATERSON, J.— This action was commenced twenty-five years ago, and has been before this court several times on appeal. The tracts of land in controversy are of great value, and are popularly known as " Woodward's Garden," " Benton's Church," and " Judson and Shepard's Acid Factory." The property is within the exterior limits of the territory described in the Van Ness ordinance, and the principal questions involved relate to the title conferred by that ordinance, and to defendants' plea of the statute of limitations. After the second decision by this court (43 Cal. 473), the defendants filed in the court below an amended answer, setting up more fully the facts upon which they relied in their affirmative defense.

Inasmuch as the appellant places great reliance upon

the decisions on the former appeals, it becomes necessary for us to review the matters adjudicated, and ascertain to what extent the law of the case has been established. It is said that because the lease was regarded and treated at the first and second trials, and on the former appeals, as valid by all the parties, and by this court, the objection made at the last trial and on this appeal, that it is invalid because not acknowledged by Mrs. Foley, cannot be considered; that it must now be regarded as a valid lease. The fact is, as stated, that the lease was at the first and second trials regarded as valid, and creating a term for years, and was so treated by this court on appeal. (31 Cal. 29; 43 Cal. 468.)

At the last trial, however, the lease was objected to, and held to be void as a lease for a term of years, but was introduced and considered in evidence only "to show the character of Comerford's holding; to show a recognition of tenancy on the part of Comerford creating a tenancy at will; and to illustrate the possession that was taken subject to it."

We do not think that the decisions upon this question on the former appeals have become the law of the case. The evidence, and the purposes for which the pretended lease was introduced, present a different question on this appeal. It is only where the evidence is the same that the doctrine contended for by appellant applies. It is doubtless true, as a general proposition, that a previous ruling of the appellate court upon a matter directly in issue is, as to all subsequent proceedings, a final adjudication, and becomes the law of the case, from which the court ought not to depart, nor allow the parties to be relieved. But when such a ruling relates to a matter of fact, the principle can be invoked only when the fact appears again to the appellate court under the same circumstances in respect to which it was originally considered. (*Mitchell* v. *Davis*, 23 Cal. 381; *Trinity County* v. *McCam-*

*mon,* 25 Cal. 121; *Leese* v. *Clark,* 20 Cal. 418; *Nieto* v. *Carpenter,* 21 Cal. 483.)

In our opinion, therefore, the court below was not bound to consider the lease as a valid lease for a term of years; and that it created simply a tenancy at will we have no doubt. (Taylor's Landlord and Tenant, secs. 19, 112.)

It is further contended that the decree and sale, followed by a deed from the commissioners to Eleonora, executed March 28, 1851, were void as to the children of Jacob Harmon, deceased, because they had not been made parties to the action after the death of their father, and therefore, that Eleonora and the children were tenants in common.

On the second appeal it was said: "The decision on the former appeal, *Ewald* v. *Corbett,* would be destitute of all basis if the estate of Jacob Harmon would not descend, or could not be distributed, under the statute regulating common property"; and it was in effect decided that the commissioners' deed of March 28, 1851, was void, and the fact that the defendants and others effected their purchase from Mrs. Foley in good faith was immaterial, the papers which the parties executed having shown that the premises were a portion of the Harmon estate, in which the children of Mrs. Foley had an interest, which Mrs. Foley had not competent power to convey. Under that decision, we must hold that "the undivided half of the premises,— that is to say, the undivided half of the interest therein which Harmon and wife held immediately preceding his death, — vested in Eleonora, either by virtue of the decree of divorce or the statute of this state providing for the distribution of the common property upon the dissolution of the community by the death of the husband; and the remaining half vested in their two children; that the right and interest in the premises, acquired or held by Harmon by virtue of his possession, conceding they were the lands of

the pueblo or the city, would descend to his heirs, if not devised by him, and that the same might be distributed under the statute relating to common property." It would seem to follow, therefore, that Eleonora and the children were tenants in common at the time the lease to Comerford was delivered (43 Cal. 476); and that if they had been in possession of the property on January 1, 1855, and remained until June 20, 1855, they would have received the Van Ness ordinance title. The same result probably would have followed had Comerford remained in possession under the lease until June 20, 1855. If we assume this to be true, then up to the time of the assignment by Comerford of his interest in the lease to Brannan and others, December, 1853, the rights of Mrs. Foley and the children in the premises would be fully preserved. This brings us to the inquiry — a most important one so far as Mrs. Foley's interest is concerned at least — as to the legal effect of Comerford's assignment to Brannan and others. By the terms of the instrument it was provided "that, whereas T. O. Larkin . . . . and Samuel Brannan have become the owners, by purchase, of the within-described premises; now therefore, in consideration of the sum of five thousand dollars to me paid, . . . . I do by these presents assign, transfer, and surrender to said . . . . and Brannan all my right, title, and interest in the said premises, under and by virtue of the within lease." What right, title, or interest did Comerford hold by virtue of the lease which could be transferred by him? He was a mere tenant at will, and could not assign the remainder of the term named in the lease. A tenancy at will is not assignable. If a tenant at will attempt to underlet or surrender, he thereby determines his will, and relinquishes the estate. (*Cooper* v. *Adams*, 6 Cush. 90; Taylor's Landlord and Tenant, secs. 62, 83.) Without the consent of Mrs. Foley, Brannan and others would be merely tenants at sufferance, and liable to an action of

trespass against them. (*Reckhow* v. *Shank*, 43 N. Y. 451.)

The tenant at sufferance has merely a naked possession; stands in no privity to the landlord; is not liable for rents, unless expressly made so by statute; nor is he entitled to notice to quit. The landlord may put an end to the tenancy when he thinks proper, and may, under certain circumstances, treat the one in possession as an intruder or trespasser. (*Hauxhurst* v. *Lobree*, 38 Cal. 563; *Meier* v. *Thiemann*, 15 Mo. App. 307; Taylor's Landlord and Tenant, sec. 65.) The relation of Brannan and others to the Foleys, therefore, depended upon the understanding and oral agreement of all the parties, and there is no question as to what that agreement was. The court found, and the finding is supported by evidence, that the preliminary agreement of sale under which Brannan and others were let into possession was a mere temporary arrangement, with a view, before completion of the purchase, to securing from Comerford a termination of his tenancy; and it was not until after this was accomplished that the purchase price was paid by Brannan and others to the Foleys. There was no recognition by the Foleys of Brannan and others as tenants. The transaction was, as between the Foleys and Brannan and others, to be a sale of all right, title, and interest of the former, or the one hundred dollars which had been paid was to be returned to the latter. The consent of Comerford was not necessary to terminate his interest in the property. The Foleys could have terminated it without his consent; and the sale by them to Brannan and others was itself a sufficient expression of their will to end the tenancy, and precludes the idea of a tenancy at will on the part of Brannan and others. (*Pratt* v. *Farrar*, 10 Allen, 520.)

If the Foleys had sold to strangers instead of to Brannan and others, the latter would not have been entitled to a notice to quit from the purchaser. The conveyance

of the property *ipso facto* destroys all privity or relation-
ship between the owners and the tenant at sufferance.
(*Esty* v. *Baker*, 50 Me. 325.)

The same result must follow when the sale is made to
the tenant at sufferance himself, especially when, as in
this case, it is expressly understood that the sale de-
pends upon the result of negotiations on the part of the
purchaser and seller to secure the surrender of all claim
on the part of the tenant at will, so that the full title
may vest in the purchaser.   There was no relation
of landlord and tenant between the Foleys and Brannan
and others.   Such relationship was never contemplated.
The Foleys recognized Brannan and others as purchasers
of the land.   The parties all acted in good faith, believ-
ing that all the right, title, and possession of the Foleys
had passed to their grantees.   Comerford paid rent to
no one after they all arrived at this understanding, but
was permitted to remain on the place till the fall of that
year to gather his crop, at which time he surrendered
possession to Brannan and others, who paid him five
thousand dollars therefor.   After such surrender, the
court finds that he acted as the bailiff or care-taker for
the purchasers.   The Foleys received six thousand dol-
lars, the purchase price in full, from the purchasers in
June, 1853, left the premises, and never afterward
claimed any right to the same; nor has any one on their
behalf ever offered to repay any money received by
them.   The fact that the writings which passed between
the parties turned out to be void cannot change the acts,
nor can it alter the intention of the parties verbally
expressed; and that intention was that Brannan and
others should have actual possession of the premises, to
have and to hold the same in their own right, without
interference or claim, trespass, or intrusion.   Such pos-
session they took in 1854, and held until the commence-
ment of this suit, eight years later; and unless we are
mistaken as to the effect of the attempted assignment by

Comerford to them, they received by virtue of the possession thus given to them the Van Ness ordinance title, to the extent at least of the interest held and controlled by Mrs. Foley, who voluntarily relinquished the premises.

The possession of Brannan and others was clearly adverse, and the statute began to run in their favor, and against the executors, from the time of their entry. (*Packard* v. *Moss*, 68 Cal. 123; *Mulford* v. *Le Franc,* 26 Cal. 90; Angel on Limitations, secs. 388–410.)

Another and more difficult question relates to the interest which descended to the heirs of Harmon. The executors have never been discharged. When Harmon died, in 1850, Mary Ann and Jacob, Jr., were respectively seven and four years of age. Neither Mrs. Foley nor her children had possession of the premises after December 16, 1853, and this action was not commenced until June 4, 1862; and upon the authorities construing the statutes then in force, and determining the rights of minors in property represented by executors, we must hold that there was, during the period mentioned, no saving of infancy. The will was duly probated. The executors took possession of the property, and retained the same until put out by the sheriff, under order of the court, made in the action for divorce and division of the property. If the entry of the defendants was wrongful, the devisees of Harmon could not maintain an action, for that right existed exclusively in the executors, who, in all suits for the benefit of the estate, represented both the creditors and the heirs. (*Cunningham* v. *Ashley*, 45 Cal. 493; *Halleck* v. *Mixer*, 16 Cal. 579.) It would seem to follow, therefore, that when the executor is barred of his action the heir is barred, although the heir or devisee be laboring under a disability. (*Wilmerding* v. *Russ*, 33 Conn. 68.) The general rule is, that when a trustee is barred by the statute of limitations the *cestui que trust* is likewise barred, even though an infant (Hill on Trustees,

267, 403, 504), and that the heir or devisee is dependent upon the diligence of the executor for the maintenance of his rights with respect to the real property, but is not without a remedy by an action for damages against his executor and his sureties, or by a proper proceeding to compel him to bring suit. (*Tyler* v. *Houghton*, 25 Cal. 29.)

This subject has been very carefully considered, and the decisions and statutes of this state elaborately reviewed, by the Circuit Court and the Supreme Court of the United States, and the conclusion reached that, where the administrator in this state neglects to bring an action to recover property of the estate until it is barred under the statute of limitations applicable to the subject, the heir is also barred, even though the heir be a minor at the time the action accrues to the administrator. (*Meeks* v. *Vassault*, 3 Saw. 214; *Meeks* v. *Olpherts*, 100 U. S. 564.)

But it is claimed by the appellant that he is not seeking a recovery upon the title or right of possession held by Jacob Harmon in his lifetime; that the only purpose of proving prior possession was to prove and identify the persons in whom the Van Ness ordinance title vested; that it is upon that title that this action is brought, and as that title never was in Harmon or his estate, the executor could not maintain an action upon the title; and that the interruption by an intruder or trespasser, referred to in the ordinance, means an ouster between the 1st of January, 1855, and the 20th of June, 1855; also that the statute did not commence to run against the Van Ness ordinance title until it vested in plaintiff's grantor, which was not until May 11, 1858. Unfortunately, however, for the appellant, all of these contentions have been disposed of adversely to him by the decisions of this court. There was no ouster during the interval referred to; and the proviso under which they claim title embraces persons evicted by intruders and trespassers as well before the 1st of January as those

evicted afterward and before the 20th of June. The statute commenced running on the eleventh day of April, 1855; and one who was ousted by an intruder before the ordinance took effect, in order to acquire the ordinance title, must recover possession from the intruder by virtue of his prior possession, in a suit commenced before his right of action on his prior possession is barred by the statute of limitations. He cannot recover from such intruder by virtue of any title vested in him by the ordinance. (*Pickett* v. *Hastings*, 47 Cal. 269; *McLeran* v. *Benton*, 43 Cal. 467; *McManus* v. *O'Sullivan*, 48 Cal. 7.)

On the day that the statute of limitations commenced to run, April 11, 1855, Mrs. Foley was a widow, and could have maintained an action. She died in November, 1859; but as the statute had commenced to run, it did not stop at her death because of the disability at that time of any person claiming under her. The disability must exist at the time the right of action first accrues. The statute commenced to run against the executors on the eleventh day of April, 1855. Their cause of action was, therefore, barred on the 11th of April, 1860; and this bar operated equally against the devisees of Harmon.

The finding of the court as to ownership is sufficient. (*Murphy* v. *Bennett*, 68 Cal. 530.)

We have examined the evidence, and think that it supports the findings. There are some errors relied upon by appellant, but we find nothing prejudicial in any of them, and the judgment and order must be affirmed, except as to those parcels of land described in the stipulation of counsel, upon which an order of dismissal has been entered herein.

McFarland, J., Sharpstein, J., McKinstry, J., and Temple, J., concurred.

Searls, C., J., not having been present at the argument, expressed no opinion.