HON. ALANSON H. BARNES, ⎫
⎬ ASSOCIATE JUSTICES.
HON. GIDEON C. MOODY, ⎭

## WAMBOLE v. FOOTE.

I. MINOR: DELEGATION OF POWER. At common law a delegation of power by a minor was absolutely void. This rule of the common law governed in this Territory until January 12th, 1866, when the Legislative Assembly, as declaratory of it and affirming it, enacted that, "a minor cannot give a delegation of power." and this section was re-enacted in 1877, and remains the law in this Territory.

Wambole v. Foote.

2. REVOCATION: SUBSEQUENT MARRIAGE. . The subsequent marriage of a *feme sole*, who has executed a power of attorney not coupled with an interest, will amount to a revocation of the power, as to all persons having notice of the marriage.

3. POWER COUPLED WITH AN INTEREST. To constitute a power coupled with an interest, there must be an interest in the thing itself, or in the subject of the agency; and not merely in the execution of the power.

4. CONVEYANCE BY MARRIED WOMAN: AT COMMON LAW: UNDER THE STATUTE: CERTIFICATE OF ACKNOWLEDGMENT. At common law a *feme covert* had no power to pass her freehold estate except by levying a fine or suffering a common recovery, and the record of the fine was evidence of a private examination by the court as to whether she did it willingly and freely or by compulsion of her husband, and could not be contradicted. Under our statute the certificate of the officer taking the acknowledgment takes the place of the record of examination in open court, and the matters required to appear in the certificate cannot be proved by parol, but must appear by the certificate or record made by the officer as a part of the transaction, at the time of the acknowledgment.

5. CERTIFICATE OF OFFICER: ESSENTIAL TO VALIDITY OF DEED. It is not the fact of privy examination alone, but also the recording or certifying of the fact, which makes the deed effectual to pass the estate of the married woman.

6. CERTIFICATE MUST SHOW: FATALLY DEFECTIVE. The certificate must show that she acknowledges upon a private examination, apart from her husband, that she executed the instrument freely, and without any compulsion or fear of her husband. And a certificate which only shows that the married woman upon an examination separate and apart from her husband, " acknowledged that she executed said instrument for the express purpose of relinquishing all right of dower in the premises conveyed," is fatally defective, and no estate passes by her deed; nor was an acknowledgment thus defective, cured by the act of January 6th, 1873.

7. PRIVATE EXAMINATION: MUST BE PERSONAL. The private examination of a married woman, required by the statute, upon the acknowledgment of her deed, is in its nature personal, and is a matter in which she cannot be represented by another.

8. HER POWER TO CONVEY: DEPENDS UPON THE MODE OF ITS EXECUTION. The common law disabilities of the *feme covert* are only removed by a strict compliance with the statute, as her power to convey her real estate depends upon the mode of its execution.

9. HER DEED NOT DULY ACKNOWLEDGED: A MERE NULLITY. The deed of a married woman not acknowledged and certified in the manner required by statute, is a mere nullity in equity as well as at law, and cannot be treated and enforced as an agreement to convey, especially where she receives no consideration for the deed.

10. TAX SALE: NOTICE. Under an ordinance which requires that notice of the sale of real estate for non-payment of city taxes, shall be published " at least once

a week for three consecutive weeks preceding the sale," publication for only twenty days is insufficient. Such notice must be published for at least twenty-one days previous to the day advertised for the sale.

11. ADVERTISEMENT AND SALE: IN PARCELS. And where such ordinance requires that the notice of sale "shall contain a list of the real estate to be sold, and the amount of city taxes due thereon, and on each lot, part of lot or parcel of real estate respectively," the advertisement and sale of three subdivisions or parcels of real estate as one parcel, is not sufficient compliance with the ordinance.

12. TREASURER'S RETURN OF SALE. And where the ordinance requires that the city treasurer shall file with the city clerk a return of the sale of real estate for non-payment of taxes, showing " the lots or parcels of real estate sold, the names of the purchasers, and the sums paid by each for each lot or parcel of real estate respectively," a return which consists merely of a copy of the advertisement, and the affidavit of publication, without giving the name of the purchaser, the time when nor the amount for which the land was sold, is not a compliance with the ordinance.

13. TREASURER'S TAX DEED: RECITAL OF ACTS SHOWING A COMPLIANCE WITH ORDINANCE. Under an ordinance which requires that the treasurer's tax deed "shall recite the powers under which the same was made, and show a compliance with all the provisions of the statute by which the power was created, and with this ordinance," a tax deed which does not contain such recitals is inoperative and void.

14. HOLDER OF LAND MUST PAY TAXES: TAKING ASSIGNMENT OF TAX CERTIFICATE AMOUNTS TO PAYMENT. The holder of lands, claiming title by deeds recorded for seven years, and permitting an assessment of the same in his name, should be estopped from denying an assumed obligation to pay the taxes; and if he allows the land to be sold, and afterward takes an assignment of the certificate, it will amount to a payment of such taxes, and a deed taken by him thereon will confer no title as against the true owner.

15. QUERY. Whether a tax deed which shows that the tax sale did not take place on the day fixed by law, and contains no recitals explaining, is not invalid on its face.

*Appeal from the District Court of Yankton County.*

ACTION in equity to cancel three deeds from plaintiff to defendant, and to set aside a tax deed from the treasurer of the city of Yankton to the defendant. Upon the trial in the court below, the presiding Judge made the following findings of fact and conclusions of law, covering all the issues.

### FINDINGS OF FACT.

I. The plaintiff in this action, Elizabeth Wambole, was born on the fifteenth day of November, 1849.

II.   The plaintiff's maiden name before her marriage with Charles Wambole, as hereinafter set forth, was Elizabeth Arconge.

III.   The plaintiff is of the mixed blood of the Dakota or Sioux Nation of Indians, and as such had certain land scrip issued to her under the laws of Congress, a portion of which was used to acquire the title to the lands described in the complaint in this action; and there was issued to her in her maiden name of Elizabeth Arconge, patents for said lands, to-wit:   For the northwest quarter of the northwest quarter, and the east one-half of the northwest quarter of section seven, township ninety-three of range fifty-five, by the government of the United States, which patents bear date July 1st, 1864, one being for the northwest quarter of the northwest quarter of said section seven, and the other of said patents being for the said east one-half of the northwest quarter of said section seven, township ninety-three, range fifty-five.

IV.   The lands thus patented to the plaintiff and described in her complaint are situated in the county of Yankton, and within the boundaries of the city of Yankton, as such boundaries are defined by the charter of said city.

V.   The plaintiff, on the fourteenth day of May, eighteen hundred and sixty-two, executed to one J. B. S. Todd a power of attorney to sell all her right, title and interest in and to the before described lands, a copy of which power is set out in the plaintiff's complaint and marked " A."

VI.   At the time of the execution and delivery of the power above mentioned, the plaintiff was twelve years and six months old, less one day.

VII.   On the twenty-fourth day of January, 1866, the said J. B. S. Todd, as the attorney in fact of said plaintiff, acting under the before mentioned power, executed in plaintiff's name, and delivered to said Obed Foote, defendant, a deed of date January twenty-fourth, 1866, to the above described lands among others, a copy of which deed is set out in plaintiff's complaint and marked " B," and which appears of record in the register of deeds' office of Yankton county, in book " A " of deeds at page 20, and again at page 24.

VIII.   The plaintiff at the date of said deed was sixteen years, two months and nine days old.

IX. The plaintiff being then unmarried was on the twenty-seventh day of February, 1865, duly married at Elk Point, Dakota, to Charles Wambole, and has ever since that time continued to be his wife and a married woman.

X. On the seventh day of May, 1866, the plaintiff, she then being a married woman, at the instance of said J. B. S. Todd, executed and delivered the two deeds to defendant, Obed Foote, covering the lands described in the complaint, copies of which deeds are set out in plaintiff's complaint marked " C " and " D," the acknowledgments to each of which are alike and were made, taken and certified in the manner following, to-wit, and at the county of Yankton,·in this Territory:

TERRITORY OF DAKOTA, } ss.
    YANKTON COUNTY,

Be it remembered, that on this seventh day of May, A. D. 1866, before the undersigned, ...................., in and for said county, in the Territory aforesaid, personally appeared Charles Wambole and Elizabeth Arconge Wambole to me personally known to be the identical persons whose names are signed to the foregoing instrument of writing as grantors and acknowledged that they executed the same freely and voluntarily for the uses and purposes therein expressed. And the said Elizabeth Arconge Wambole of the said county and Territory, being examined separate and apart from her husband, acknowledged that she executed the said instrument for the express purpose of relinquishing all right of dower in the premises above conveyed. The word husband was interlined before signature.

In testimony whereof, I have hereunto set my hand and seal the day and year last above written at my office in Yankton.

    : NOTARIAL :
    :  SEAL.  :          JAMES S. FOSTER,
                                       *Notary Public.*

XI. The said deeds marked " C " and " D " appear of record in the register of deeds' office of said Yankton county, in book " A " of deeds at pages 29 and 30.

XII. At the time of the execution and delivery of the deeds, dated May seventh, 1866, the plaintiff was sixteen years, five months and twenty-two days old.

XIII. The plaintiff has ever since her birth been a resident of this Territory, and at the time of the execution of said deeds was a resident of Yankton county.

XIV. The plaintiff has never received any consideration for the said conveyances or either of them, save the promise by said Todd to convey to her some lots in the city of Yankton of equal

or greater value.   But which lots were not designated by said Todd, nor was there any agreement as to what or how many lots were to be conveyed.

XV.   The plaintiff at the time of the commencement of this action was in the actual possession of the said lands, she having a short time previous thereto taken possession thereof and made some improvements thereon.

XVI.   At the time of the taxation and sale for taxes, and making of the tax deed alleged in plaintiff's complaint and hereinafter mentioned, said lands were vacant prairie lands and had never been used for city purposes, had never been laid out into lots or blocks, nor had any streets or alleys or other city improvements been made into or through them.

XVII.   The mayor and city council of the city of Yankton assessed said lands for city taxes for ordinary city purposes for the year 1873, and levied taxes thereon amounting to four dollars and eighty cents, in the name of the defendant Foote; and said taxes not having been paid, the said lands were sold by the city treasurer for such taxes at the sale, which took place in February, 1874, to Woolley and Ward, and not having been redeemed from such sale, the defendant having become the owner of the certificate of sale on the nineteenth day of February, 1876, the tax deed described in plaintiff's complaint, a copy of which is there set out and marked "E," was executed and delivered to the defendant, and appears of record in the register of deeds' office of said Yankton county, in book "D" of deeds at page 472.

XVIII.   The said taxes were levied and assessed, and said sale was had and said deed executed and delivered under and by virtue of an ordinance of the city of Yankton, passed by the mayor and city council, August eighteenth, 1873, and amended January twenty-seventh, 1874, which original ordinance is entitled, "An ordinance relating to the levy and collection of taxes for city purposes;" the provisions of which, so far as they relate to this action for the purpose of determining the same, are as follows:

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

SEC. 12.   On the first day of December next succeeding the levy of any annual city tax, the same if unpaid shall become and be deemed delinquent and shall be charged with interest at the rate of one per cent., which interest shall be due and

payable on the first day of each month, in advance, except if any person pay such tax on the first day of December no interest shall be charged on such tax for such fiscal year. If any tax on any real estate of said city, together with the interest due thereon, is not paid before the first day of January next after the same becomes delinquent, the treasurer shall proceed to collect the same, together with costs of sale, by public sale of such real estate.

SEC. 13. The treasurer shall give notice of such sale by publication thereof, at least once a week for three consecutive weeks, in the month of January or February preceding the sale of said property, in the official paper of the city; such notice to contain a notification that all real estate, the taxes on which are then delinquent and unpaid, will be sold to pay such taxes, and all taxes due thereon from the owner or holder of such real estate; and it shall specify the time and place of sale, and contain a list of the real estate to be sold, and the amount of city taxes due thereon and on each lot, part of lot or parcel of real estate respectively.

SEC. 14. On the second Monday in February in each year, between the hours of nine o'clock, A. M., and four P. M., at some place to be designated in such notice in said city, the treasurer shall offer at public sale, to the highest bidder, all lots, parts of lots, lands and real estate of every description on which the city taxes which shall have become delinquent still remain unpaid, and he may adjourn the sale from day to day throughout that week, or until all the real estate so advertised shall have been offered.

* * * * * * * * * * * * * *

SEC. 16. On or before the second Monday of March following the sale of any real estate as above provided, the treasurer shall file in the office of the city clerk a return of his sale of real estate for delinquent taxes, showing the lots or parcels of real estate sold, the names of the purchasers and the sums paid by each for each lot or parcel of real estate respectively. He shall also file in said clerk's office a copy of the notice of sale, with an affidavit of the advertising or posting of such notices. The description of real estate in such return shall be entered in the same order as in the tax list.

* * * * * * * * * * * * * *

SEC. 20. The owner of any real estate sold for taxes, or his or her agent, may redeem the same within two years after the day of sale, or at any time before a tax deed is issued therefor, by payment to the treasurer for the use of the purchaser of the full amount of the tax, interest and costs for which the same was sold, and all taxes subsequently paid thereon by the purchaser, together with the interest thereon, at the rate of forty per cent. per annum, from the date of purchase or payment, and the treasurer shall hold the redemption money paid subject to the order of the purchaser or his assignee.

* * * * * * * * * * * * * *

SEC. 21. If no person shall redeem such real estate within two years from the date of sale, the treasurer may at any time thereafter execute and deliver to the person owning and presenting the certificate of sale, in the name of the city, a conveyance of real estate so sold. Such conveyance shall be executed and acknowledged by the treasurer and attested by the city clerk with the seal of the city attached. It shall describe fully and correctly the premises conveyed, and it shall state the time and place, where and for what purposes the same was sold. It

shall also recite the powers under which the same was made, and show a compliance with all the provisions of the statute by which the power was created and with this ordinance.

\*   \*   \*   \*.   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   .

The amendment to said original ordinance, which amendment was passed January twenty-seventh, 1874, is as follows:

" ORDINANCE TO AMEND AN ORDINANCE ENTITLED 'AN ORDINANCE RELATING TO THE LEVY AND COLLECTION OF TAXES FOR CITY PURPOSES,' " PASSED AND APPROVED AUGUST 18TH, 1873.

*Be it Ordained by the Mayor and Council of the City of Yankton:*

SEC. 1.   That section fourteen of an ordinance entitled "An ordinance relating to the levy and collection of taxes for city purposes, passed and approved August 18th, 1873, be and the same is hereby amended by striking out the word 'second" in the first line of said section and inserting in lieu thereof the word "third" so that the sale of real estate therein provided for shall take place on the third Monday of February of each year instead of the second Monday, as in said ordinance now provided.

SEC. 2.   This ordinance shall take effect and be in force from and after its passage and approval by the Mayor.

Passed January 27, 1874.   Approved January 27, 1874.

Attest:                                                   F. J. DEWITT, *Mayor.*

E. T. WHITE, *City Clerk.*

XIX.   On the twenty-seventh day of January, 1874, a notice of the sale of said property for such taxes was first inserted in the *Dakota Herald,* the official paper of said city of Yankton, and was continued therein on the third and tenth days of February, 1874, and such sale was thus advertised to take place at the city clerk's office in said city on the sixteenth day of February, 1874, being the third Monday of said month.

XX.   No return whatever was made by the city treasurer of his sale of such real estate on or before the second Monday of March, 1874, nor was any on or before said day filed in the office of the clerk of said city.   The only return by him that was made, and filed March twenty-first, 1874, consisted merely of a copy of the advertisement with the affidavit of publication by the publisher of the said paper without giving the name of the purchaser, nor the time when sold, nor the amount for which the same was sold; but it appears from a book in evidence from the office of the city treasurer that said land was sold for five dollars and fourteen cents to said M. T. Woolley.

XXI.  It appears from the said advertisement and sale book from the city treasurer's office that said property was all advertised and sold, including all of the three subdivisions, as one parcel, and was so advertised and sold as the property of the defendant Foote for said amount.

XXII.  Before the commencement of this action the plaintiff paid to the treasurer of the city of Yankton for the use of the holder of the certificate of purchase, the defendant, the sum of sixty-nine dollars and eight cents, that sum being the amount of the sale money, taxes since paid, interest, penalty and costs and expenses, and being the whole sum necessary under the city ordinance to redeem such property from such sale, and during the trial, the said amount was brought by the city treasurer into court and paid over to the clerk for the use of the defendant.

XXIII.  Some time in 1860 the defendant, Obed Foote, settled upon the lands in dispute and made some improvements thereon, and in the fall of 1862, through the representations of J. B. S. Todd, of the firm of D. M. Frost & Co., he relinquished whatever right he had to said lands, and said D. M. Frost & Co. were to convey said lands to said defendant as soon as they received title thereto, in consideration of which defendant paid Todd the sum of four hundred dollars, and the deeds obtained from plaintiff and her husband of date May 7, 1866, were in pursuance of said arrangement.   And said plaintiff has never before this action disaffirmed said deeds to defendant or to his authorized agents except by her declaration to said Todd, nor has plaintiff returned or offered to return to defendant the said consideration paid by defendant to said Todd.

CONCLUSIONS OF LAW.

1.  The property described in plaintiff's complaint was the sole and separate property of the plaintiff in her own right.

2.  The power of attorney from the plaintiff to J. B. S. Todd, of date May fourteenth, 1862, is and was null and void.

3.  The deed made by said Todd, under said power, of date January twenty-fourth, 1866, is also null and void.

4.  The two deeds from the plaintiff to defendant, of date May seventh, 1866, not having been acknowledged in the manner required by law, passed no estate from her to the defendant.

5. The sale of this property for city taxes not having been advertised for three consecutive weeks, as required by the ordinance of said city, such sale was illegal and void.

6. No return of such sale having been made by the city treasurer and filed with the city clerk on or before the second Monday of March after such sale, as required by the city ordinance, no deed to the said lands could be legally made by the city treasurer to the purchaser at said sale or his assigns.

7. The said treasurer's deed is inoperative and void for the aforesaid reasons, and for the further reason that it does not contain the recitals required by the ordinance of said city and does not show a compliance with said ordinances.

8. The title in fee to the said property described in the complaint, to-wit: The northwest quarter of the northwest quarter, and the east one-half of the northwest quarter of section seven, township ninety-three of range fifty-five, situated in Yankton county, Dakota Territory, is still in the plaintiff, Elizabeth Wambole, and inasmuch as such instruments heretofore mentioned cast a cloud upon her title they should be cancelled and annulled, and the record of the same cancelled.

9. The defendant is at liberty to take from the clerk the sixty-nine dollars and eight cents paid over to him by the city treasurer, the money paid by plaintiff to the treasurer to redeem said lands from the city taxes.

*C. J. B. Harris*, for appellant.

Plaintiff's minority cannot avail her. (*Stout v. Merrill*, 35 Iowa, 55; see also 21 Iowa, 585; 12 Iowa, 195; 24 Cal., 195, 215.) She has never restored consideration. (§§ 16 and 17, Civil Code.) She cannot rescind unless she moves promptly. (§ 967, Civil Code.)

Her deeds of May 7, 1866, were acknowledged according to law. (11 Ills., 123; *Hartley v. Farrell*, 9 Florida, 374; 7 U. S. Digest, 260, §§ 2389–90; 26 Ills., 97; *Moore v. Titman*, 33 Ills., 365; *Stuart v. Dutton*, 39 Ills., 91; *Tourville v. Pierson*, 39 Ills., 446 (453–); 7 U. S. Digest, 263, § 2450; *Hoddy v. Harryman*, 3 Har. & M., 581; 7 U. S. Digest, 262, § 2429; 26 Miss., 567; 35 Miss., 83; 7 U. S. Digest, 262,

§§ 2444, 2448; *Den v. Gieger*, 9 N. J. Law, 225; 7 U. S. Digest, 263, § 2460; *Brown v. Farrin*, 3 Ohio, 140; *Chestnut v. Shaw*, 16 Ohio, 599; *Ruffner v. McLennan*, 16 Ohio, 639; 5 Ohio St., 320; 15 Ohio, 408; *Newcomb v. Smith*, Wright (Ohio) 208; 7 U. S. Digest, 265, § 2495; see §§ 2506-8, 2511-12, 2514, 2521, 2531, 2553 of 7 U. S. Digest, 265 *et seq.;* Digest, 1870, p. 222, § 38; 4 U. S. Digest, 491, §§ 535-9; ib. 496, § 677; *Stevens v. Doe*, 6 Black'f., 475; ib. pp. 477 and 391; *Flemming v. Potter*, 14 Ind., 486; 25 Pa. St., 468.)

If her deeds were not legally acknowledged they amount to a contract to convey. (§§ 16, 17, 79 and 872, Civil Code; § 522, old; *Smith v. Turpin*, 20 Ohio St., 478; *Phillips v. Graves*, ib. 371; 6 Wend., 13; 5 Day, 496; 2 Kent, 137-41; 1 Johns. C. R., 450; 3 Johns. C. R., 77; 17 Johns., 548; 11 Howard's Pr., 486; 15 Barber, 555; 12 Cal., 564; 30 Cal., 512; 32 Cal., 376, 653; 36 Cal., 655; 40 Cal., 547.)

The defect in the acknowledgment, if any has been cured by the laws of 1872-3, p. 64, §§ 4 and 5. ( *Wilkinson v. Leland*, 2 Peters, 627.) Such defects can be cured by legislative enactment. (25 Ind., 1; 8 Peters, 88; 3 Wall., 327; 23 Wall., 137; Sedg. on St., 144, 172; 30 Cal., 138; 16 Ohio, 599; 6 Hill, 177; 10 N. Y., 422; 28 Conn., 97; 30 Conn., 149; 26 Iowa, 340.)

Section five provides that acknowledgments without the separate examination shall be sufficient to authorize their being recorded without *other* or additional certificates, and it makes the record of such instruments heretofore made valid. Could it have been the intention of the Legislature to authorize such deeds to be recorded, or to make the record of such deeds valid and allow the deeds themselves to remain invalid.

Wambole had right of curtesy in the lands prior to January, 1866, which Civil Code could not take away. The deeds of May 7, 1866, conveyed his life estate, hence no action can be sustained by plaintiff during his life. (7 U. S. Digest, 261, §§ 2417, 2464; 8 B. Mon., 177; 9 Ind., 184; 5 Mass., 438; 4 Ohio St., 216, 464; 20 Ohio St., 128; 5 Ohio St., 45 (48); 6 Ohio, 78; Digest, 1871, p. 349, § 39; 66 Barber, 288; 18 Ohio St., 45; 7 U. S. Digest, 170, §§ 542, 543, 547, 548, 589; 2 Kent, 130 (110); 15 Barber, 337; 51 Ills., 226; 58 Ills., 30.)

Defendant could successfully prosecute an action for the correction of the acknowledgment.    (§ 607, Civil Code; 26 Ohio, 153); and such being the case, in equity he would not be required to bring separate actions, but all equities between the parties should be settled in this action.

The tax deed divested plaintiff of her title.   No defect in the proceedings is shown until after sale.

*Moody & Smith,* for respondent.

I.   The first question, in the order in which we prefer to place this case before the court, is as to the effect of the deed made by Todd as attorney in fact of respondent to the appellant, of date January 24th, 1866, under and by virtue of the power of attorney which purports to have been executed by Mrs. Wambole in her maiden name in 1862. · The power and the deed having been both executed while she was a minor are void, and will be so declared when the proof of her minority is shown as in this case.    This needs no argument, and not even a citation of authority.    The principle is elementary, and indeed is not contended against by respondent.    But the facts constituting them void, not appearing upon the face of the instruments, it was necessary to come to a court of equity to have the cloud removed, and the court having acquired jurisdiction for one purpose may proceed to inquire what other impediments in the way of a clear title in the plaintiff to this land exist, so far as this defendant is concerned.    And this leads us to the next inquiry:   (See § 15, p. 3, Statutes 1865–6; Schouler Dom. Rel., 540; *Bennett v. Davis,* 6 Cowan, 393; *Knox v. Black,* 22 Pa. State, 337.)

II.   What was the effect of the two deeds of date May 7th, 1866. Mrs. Wambole was then a married woman.    The acknowledgments of those deeds were not in accordance with the statute relating thereto, and therefore by the express terms of the statute they "passed no estate" whatever.    If then no estate passed, Foote acquired thereby neither a legal or equitable estate in said lands, or any interest whatever therein.   (§ 486, p. 88, Laws 1865–6; § 521, p. 95, ditto; § 526, p. 96, ditto; *Martin v. Dwelley,* 6 Wend., 9; *Heaton v. Freyberger,* 38 Iowa, 185; *Meriam v. Harsen,* 2 Barb. Ch.,

271; *Knowls v. McCamley*, 10 Paige, 342; *Hepburn v. Dubois*, 12 Peters, 374; *Lane v. Dolick*, 6 McLean; *Elliot v. Piersol*, 1 Peters, 328; *Elwood v. Klock*, 13 Barb., 50; Well's Sep. Prop. Married Women, 522–9; *Willis v. Gattman*, 53 Miss., 72; *Lindley v. Smith*, 46 Ills., 528; *Trustees v. Davison*, 65 Ills., 126; *Colburn v. Kelley*, 61 Pa. State, 314; 52 Pa. State, 400; 61 Pa. State, 314; 20 Ills., 137; 15 id., 123.) If no equitable estate or interests in the lands passed, then no contract was made to convey. Beside, these deeds do not contain any covenants, but are mere naked grants or quitclaims. (Walker's Amer. Law, 327; *Selover v. Am. Rus. Co.*, 7 Cal., 267; 25 id., 382; *Barrett v. Tewksbury*, 9 Cal., 14; 13 id., 498; *Dodge v. Hollingshead*, 6 Minn., 25; *Miller v. Hine*, 13 Ohio State, 565; *Needles v. Needles*, 7 Ohio State, 432.) No attempt was made to correct or reform the certificates of acknowledgments, nor would it have been allowable if defendant had made the effort. For if the certificate of the acknowledgment of a married woman be defective it cannot be made good by parol proof. Her deed can only become operative, under our statute, on a certificate of acknowledgment being attached thereto in the form prescribed by law. (*Silliman v. Cummins*, 16 Ohio, 113; *Gillett v. Stanley*, 1 Hill, 121; *Martin v. Dwelly*, 6 Wend., 12; *Bours v. Zachariah*, 11 Cal., 281 291; *McLaren v. Bolton*, 43 Cal., 467; *Lane v. Dolick*, 6 McLean, 200.) The validity of these instruments depends upon the laws in force when they were executed. (§ 669, Civil Code, p. 341, Revised Code of 1877.) Therefore we are to look to the Civil Code of January 12th, 1866, as a rule by which we are to test the sufficiency of the execution of these instruments.

III. The city treasurer's deed to the same party, Foote, is inoperative and void for the following among other reasons:

1. The property taxed was suburban property, and not liable to taxation for general city purposes. (*Morford v. Unger*, 8 Iowa, 82; *Langworthy v. Dubuque*, 13 Iowa, 86, and S. C.; 16 id., 271; *Fulton v. Davenport*, 17 Iowa, 404; *Buel v. Ball*, 20 Iowa, 282; 1 Neb., 16; *O'Hare v. Dubuque*, 22 Iowa, 144; *Deiman v. Ft. Madison*, 30 Iowa, 542; 9 B. Monroe, 330; 17 id., 223; 15 id., 491; 2 Met. (Ky.) 553; 2 Bush (Ky.) 271; 7 id., 37; 8 id., 607; Dillon, Municipal Corporations, Par. 634.)

2. No sufficient notice of the sale of this property under the ordinance was given, it requiring three weeks publication, to-wit, 21 days, and the publication was for only 20 days. (Black, Tax Titles, p. 236 (margin), and see p. 489 as to equity powers; see id., p. 447, *et seq.*, as to power of municipal corporations.)

3. The return of this property should have been to the county treasurer, and the sale made by him.

4. No return of the sale was made by the treasurer, as required by the ordinance, nor was any return whatever filed within the time prescribed by the city ordinance. (pp. 300 to 341 inclusive, Black., Tax Titles; *Hall v. Kellogg*, 16 Mich., 135.)

5. The deed itself does not contain the recitals which the ordinance requires, and is therefore void.

6. The assessment of this property having been in Foote's name, and he presumed to be in possession under his claim of title, he should have paid the tax, and could gain no title by letting it go to sale. (*Barrett v. Amerien*, 36 Cal., 322; *Garwood v. Hastings*, 38 Cal., 217; *Reiley v. Lancaster*, 39 Cal., 354; *Bernell v. Lynch*, 36 Cal., 135; *Bassett v. Welch*, 22 Wis., 176; *Kelsey v. Abbott*, 13 Cal., 609; *Moss v. Shear*, 25 Cal., 38; 33 Cal., 425.)

IV. The claim of Foote under a supposed tenancy by curtesy possessed by Mr. Wambole cannot be sustained, and is made for the first time in this court. No where in the record does it appear that a tenancy by curtesy in Mr. Wambole attached to this property. There is no evidence that any child was born to these parties, or that the tenancy ever became initiate; and while not initiate or even consummate, it was perfectly competent for the Legislature to abolish it. But if curtesy had not been abolished this equitable action could be maintained by Mrs. Wambole to remove the clouds cast upon her title in fee, leaving the mere tenancy or right of possession to be determined thereafter.

SHANNON, C. J.—The important question before us is, are the conclusions drawn by the court below legally deducible from the findings of fact? The latter cover all the issues, and from the former we are to inquire in the first place whether the power of attorney from the plaintiff to J. B. S. Todd, of date May 14th, 1862, and the deed made by him under said power, of date January 24th, 1866, are null and void.

It is to be observed that there is nothing appearing on the face of either of these instruments to disclose their alleged invalidity in regard to the disability of minority or infancy; and hence, in equity, springs the jurisdiction. The facts disclosed by the findings are, that at the time of the execution and delivery of the power the plaintiff was only twelve years and about six months old; and at the date of the deed she had only attained the age of sixteen years and about two months.

At common law the contracts of infants were divided into three classes, namely: *First*, those which were absolutely void; *second*, those which were only voidable; and *third*, those which were binding. In the distinction made in the books between void and voidable acts of an infant, a power of attorney is generally selected by way of example as an act absolutely void.

In *Zouch v. Parsons*, 3 Burr, 1804, Lord Mansfield and the court approved the law as laid down by Perkins, that "all such gifts, grants or deeds made by infants, *which do not take effect* by delivery of his hand, are void; but all gifts, grants or deeds made by infants, by matter of deed or in writing, *which do take effect* by delivery of his hand, are voidable by himself, by his heirs, and by those who have his estate." And in Mansfield's view the words " which do take effect" are an essential part of the definition, and exclude letters of attorney, or deeds which delegate a mere power, and convey no interest. So that, according to his opinion, there is no difference between a feoffment and any deeds which convey an interest. In each case, if the infant makes a feoffment or delivers a deed in person, it takes effect by such delivery of his hand, and is voidable only. But if either be done *by a letter of attorney* from the infant, it is void, for it does not take effect by a delivery of his hand.

Chancellor Kent, in his Commentaries, (vol. 2, p. 2·6,) states that the doctrine of *Zouch v. Parsons* has, in this country, been recognized and adopted as law; and in Bingham on Infancy, 34, such warrant of attorney is ranked as void. (See *Conro v. Birdsall*, 1 John. Cas., 127; also Brightly's Eq. Jur., § 75.)

In Story on Contracts, § 59, it is stated, that an exception, as to voidable contracts, obtains in the case of a power of attorney exe-

cuted by an infant, which is treated as utterly void. That writer says that "the point, however, is settled; and an authority so delegated, even though it enure to the benefit of the infant, is a nullity, and cannot be rendered valid by a subsequent ratification." It is true that, with his usual care, this author notices a few exceptional cases plainly beneficial to the infant; yet in 1 Parsons on Contracts, 243, it is said that an infant's warrant of attorney, "authorizing a conveyance of his land, * * * or his appointment of an agent of any kind," has been declared to be absolutely void.

In *Bool v. Mix*, 17 Wend. R., 119, the rule was admitted to be that all deeds and instruments under seal, executed by an infant, were voidable only, with the single exception of those which delegate a naked authority. And further, that an infant cannot give a delegation of power. (See *Bennett v. Davis*, 6 Cow., 393; *Roof v. Stafford*, 7 Cow., 180; *Knox v. Flack*, 22 Pa. St. R., 337; *Lawrence v. McArter*, 10 Ohio, 37; *Cole v. Pennoyer*, 14 Ills., 158)

Against the current of the common law it cannot, therefore, be contended that an act done by another for an infant, which act must necessarily be done by letter of attorney, under seal, is not absolutely void. This particular disability, after all, works no hardship, but rather a benefit; for the disposition of the infant's property is perhaps better secured through a guardian, under the control of a court.

This rule of the common law governed in this Territory until January 12th, 1866, when, as declaratory of it and affirming it, the Legislative Assembly enacted that "*a minor cannot give a delegation of power*," (Civil Code of 1866, § 15,) and when the Civil Code came up for revision in 1877 this section was re-enacted; and it remains the law.

Upon recurring to the findings it will be noticed that the alleged power remained unexecuted until January 24th, 1866, the date of the conveyance, a period of three years and eight months. At that time the delegation of power was void, not merely at common law, but also by force of the statute.

In this connection another point should not be overlooked. Laying entirely aside all question of minority, there is, it seems, another ground upon which the deed is inoperative. Between the

dates of the two instruments the state and condition of the plaintiff became changed, for on the twenty-seventh day of February, 1865,(as the ninth finding shows) she was married to Charles Wambole, and has ever since continued his wife.   That the defendant, as well as the holder of the power, had actual notice of the marriage, is quite evident from the conveyance itself, which purports to be made by Elizabeth Wambole, formerly Arconge, by her attorney in fact; and to which the latter appends her name as " Elizabeth Wambole, formerly Elizabeth Arconge, by J. B. S. Todd, her attorney;" and moreover, it is acknowledged by the attorney for her as such married woman.   These being the facts, did they amount to a revocation of the power?   The instrument of May 14th, 1862, contains no words of conveyance or of assignment.   It constitutes no part of a security to the donee.   It is a mere power to sell and convey. It is not, therefore, a power coupled with an interest, to constitute which there must be an interest in the thing itself, or in the subject of the agency, and not merely in the execution of the power.

It was formerly held that if a *feme sole* created an attorney, and then married, it would revoke such power; and this, even, with regard to a warrant of attorney to confess judgment.   (2 Kent's Com., 645 ; *Judson v. Sierra*, 22 Texas, 365, 371.)   But this broad doctrine has been modified, and in *Enne v. Clark*, 2 Pa. St. R., 234, it is held that if a *feme sole* give a warrant of attorney to confess judgment on her bond, and afterward marry, the warrant is not revoked, and this because in such case there is a power coupled with an interest in the obligee.   But, in the same decision, it is conceded that, " if it be a power uncoupled with an interest—as, for example, to collect debts—a subsequent marriage, with notice, will amount to a revocation."

Proceeding, however, from common to statutory law, it will be seen that, by section 486 of the Civil Code of January 12th, 1866, (herein subsequently quoted,) a married woman is declared incapable of contracting by any grant of her real property so as to pass her estate therein, unless in the particular mode prescribed, to-wit: by personal acknowledgment before a proper officer, on a private examination, apart from her husband.   But, as has already been seen, the acknowledgment of the deed of January 24th, 1866, was made by the attorney, and she being then incapable of thus

contracting, the power of the agent was terminated by force of section 1263 of the same Code. And yet further, up to the date of the deed, the estate was certainly still vested in her, and it has been held that the private examination required by the statute is in its nature personal, and that it is a matter in which she cannot be represented by another. (*Mott v. Smith*, 16 Cal., 533; *Hollady v. Daily*, 19 Wall., 609.)

Consequently, in no possible view of the case can it be contended that the deed of January 24th, 1866, conveyed any estate or interest to the defendant; and the district court was, therefore, correct in its conclusions of law that the two instruments named are null and void.

The next inquiry is, whether the two deeds from the plaintiff to the defendant, of date May 7th, 1866, passed any estate from her to the defendant.

As between the parties to this action this query hinges upon the legality of her acknowledgments to the two deeds, as contained in the certificates of the notary public, which are fully set out in the findings. The law in force at the time must form the test.

At common law a wife was disabled from aliening her lands by deed, either by herself or by uniting with her husband. Her deed being void, the only mode in which she had power to pass her freehold estate was by levying a fine or suffering a common recovery. In a conveyance by fine, or acknowledgment of a feoffment of record, the wife was privately examined by the court whether she did it willingly and freely, or by compulsion of her husband. In this way was removed the general presumption of the law that she was acting under the coercion of her husband, (2 Bl. Com, 351; *Bool v. Mix*, 17 Wend., 128; 3 Wash. R. Prop., 227,) and the record of the fine was evidence of the private examination of the married woman, and could not be contradicted. (Bac. Abr. Fines and Recov., C.) And so the modern certificate cannot be legally proved by parol. In the place of this common law mode, and as a sort of substitute for it, the Legislature of New York, as early as 1771, enacted that no estate of a *feme covert* should thereafter pass by her deed without a previous acknowledgment made by her, apart from her husband, and on a private examina-

tion, "that she executed the same freely, without any fear or compulsion of her husband," and a certificate thereof purporting that she had been so privately examined, indorsed on the deed and signed by the officer before whom the acknowledgment was made. (See Act of 1771 in 3 R. S. App., 22; 2 Kent's Com., 150; *Jackson v. Gilchrist*, 15 John., 109; *Bool v. Mix, supra*.) The same provision was re-enacted in that state in 1788, and again in 1801, and again in 1813. (2 Greenl., 99, § 3; 3 R. L. App., 26, 30; 1 R. L., 369.)

In each of the acts referred to the certificate of the officer that the acknowledgment of the execution of the conveyance was made upon such private examination of the wife, apart from her husband, was made essential to the operation of the deed. Without this certificate no estate of a *feme covert* could pass by deed. The law required not only the private examination, but it also required the certificate of the fact to be made at the time, and as a part of the transaction; and the fact could not, under these statutes, be made to appear except by the certificate. The certificate took the place of the record of the examination in open court, and performed the same office; and in *Elliott v. Peirsol*, 1 Peters, 328, it was held that the private examination and acknowledgment of her deed cannot be proved by parol, but it must appear by the certificate or record made at the time. In the same case it was said that the capacity of the *feme covert* to convey her estate by deed, being the creature of statute law, to make her deed effectual "the forms and solemnities prescribed by the statutes must be pursued." But as to New York, in the revision of the laws there in 1830 the same provision as above was substantially re-enacted. The language employed is slightly different, and the provision in relation to a certificate is placed in a section by itself. It is provided: *First*, that no estate of a married woman shall pass by any conveyance not acknowledged as required by the act; and, *second*, that the officer who shall take such acknowledgment shall indorse a certificate thereof, signed by himself, on the conveyance, and in such certificate shall set forth the matters thereinbefore required to be done. (1 R. S., 758, §§ 10, 15.)

In *Albany Fire Ins. Co. v. Bay*, 4 Comstock, 14, Jewett, J., in referring to the act of 1771, said that "this act, prescribing the form in which the deed of a *feme covert* should be acknowledged in order

to pass her real estate, has been substantially continued in respect to married women residing in this state, in the successive revisions of the laws."

The above is a synopsis of the legislation of New York, (embracing 1 R. S., 758,) derived from the opinion of Allen, J., in *Elwood v. Klock*, 13 Barb., 50, and from the other authorities named. And the importance of such review becomes apparent when it is known that our Civil Code is in great part derived, at least in the respect under consideration, from the Revised Statutes of that state in force at the time of the codification.

The Civil Code of this Territory, adopted January 12th, 1866, was originally the product of the labors of eminent jurists of that state, whose purpose was to give the law as it then existed there, and to specify such alterations and amendments therein as they should deem proper. Accordingly section 486 of our Code was taken from 1 R. S., 753, § 10, modified by making the requirement apply to grants executed and acknowledgments taken within the state or territory, instead of to acknowledgments wherever taken, of a married woman residing in the state or territory. It is as follows: "No estate in the real property of a married woman passes by any grant purporting to be executed or acknowledged by her within this Territory, unless the grant is acknowledged by her in the manner prescribed by section 521."

Section 521 was also taken from 1 R. S., 758, § 10, and is as follows: "Sec. 521. The acknowledgment of a married woman to an instrument, purporting to be executed by her, cannot be taken within this Territory, unless she acknowledges to the officer, on a private examination apart from her husband, that she executed such instrument freely, and without any compulsion or fear of her husband."

Section 526 was taken from 1 R. S., 759, § 15, and is as follows: "Sec. 526. An officer taking the acknowledgment or proof of any instrument must indorse upon the instrument a certificate thereof, signed by himself personally, setting forth all the matters required by law to be done or known by him, or proved before him, on the proceeding, together with the names of all the witnesses examined before him, their places of residence, respectively, and the substance of their evidence."

It will be noticed that this section embraces both the proof and the acknowledgment of instruments; but, as in the case before us, there is no question as to the former, but solely as to the latter, by eliminating what is foreign to the point the section will read thus: "An officer taking the acknowledgment of any instrument must indorse upon the instrument a certificate thereof, signed by himself personally, setting forth all the matters required by law to be done or known by him." That is to say, the certificate must contain *all the* matters prescribed in section 521. This is absolutely essential, for what the law requires to be done and appear of record can only be done and made to appear by the record itself, or an exemplification of the record. By the above provisions of the law it is not the fact of privy examination alone, but the recording or certifying of the fact, which makes the deed effectual to pass the estate of the married woman. By section 486 it is expressly declared that no estate passes unless the acknowledgment is in the manner set out in section 521; and the record made by the officer must show, so far as the wife is concerned, that she acknowledged, on a private examination, apart from her husband, that she executed the instrument *freely*, and without any compulsion or fear of her husband. How is the record in this case? It is as follows, so far as her private examination is involved, to-wit: "And the said Elizabeth Arconge Wambole, of the said county and territory, being examined separate and apart from her husband, acknowledged that she executed the said instrument for the express purpose of relinquishing all right of dower in the premises above conveyed." Now, as the great object in view, both at the common law and by statute, is to ascertain whether the wife acted under fear or compulsion, how can it be pretended that the above is an adequate compliance with the law? There is a total absence of the requisites which, when the wife is under such private examination, the officer is bound to ascertain, and to record, and to certify. In *Meriam v. Harsen*, 2 Barb. Ch. R., 232, the contention was in regard to the absence of the word "freely;" although the wife acknowledged in that case that "she executed the same without any fear, threat or compulsion of her husband." After a struggle that record was held sufficient, because, from the words set out, there arose an implication that the act was done "freely."

In *Gillett v. Stanley*, 1 Hill, 121, Judge Bronson said: "There was no such acknowledgment as the statute required for passing the estate of the *feme covert;*" and then adds: "Without an acknowledgment, on. a private examination, etc., the deed was a mere nullity."

The chancellor said, in *Knowles v. McCamly*, 10 Paige, 346, that "where the legal estate is in the wife, except in the case of a nonresident of the state, her deed or contract, conveying or agreeing to convey such estate, if not acknowledged according to the statute, is a mere nullity in equity, as well as at law."

In *Martin v. Dwelly*, 6 Wend., 12, Sutherland, J., referring to 1 R. L., 369, on this subject, said, that "it gives to her deed, *when duly* acknowledged, the same power and effect *as a fine;* but, if not acknowledged according to the direction of the statute, it declares that no estate shall pass by it; it leaves it as it would have stood at the common law, if the statute had never been passed, absolutely void and inoperative." In *Bool v. Mix, supra*, Bronson, J., again stated that "the acknowledgment of a married woman shall not be taken, except in a particular manner, nor shall her estate pass by a conveyance not so acknowledged."

Referring to 1 R. S., 758, §§ 10, 15, Mr. Justice Allen (in *Elwood v. Klock, supra*) says: "The statute still looks to the certificate as containing the evidence that its requirements have been complied with, to enable the deed to become operative. The execution of a deed by one not under disabilities may be operative to pass an estate without an acknowledgment, and the execution may be proved by any competent evidence. Not so of a deed of a *feme covert;* no estate passes except the conveyance is acknowledged as required by law. The disabilities of the wife are only removed by a strict compliance with the statute. As no deed can be recorded except upon a proper certificate of acknowledgment," (see section 509 of Civil Code of this Territory,) "a deed of a *feme covert* cannot take effect for any purpose except upon a like certificate."

It must be added that in order to comprehend the full meaning of section 526, requiring the certificate to set forth "all the matters required by law to be *done* or *known* by him," (the officer,) "or proved before him," it is necessary that section 520 be read in connection, as also the other sections of Article III relating to "proof and acknowledgment of instruments."

In thus tracing the origin and in giving the contemporaneous exposition of these statutes incorporated into our Code, this opinion has become somewhat lengthy. The cause of this, however, is that a thorough and complete understanding of them is essential in this, the first case in this Territory calling for their interpretation. It is not that there is any ambiguity in the language, but that a clearer light is shed from the history of a statute, and from opinions in respect to it entertained by jurists at the time of its passage. A contemporaneous is generally the best construction of a statute.

In California the examination of a married woman must be separate, and this can only be shown by the certificate of the officer taking the acknowledgment, which must conform to the statutory requirements, else the deed is inoperative and void. (*Bours v. Zachariah*, 11 Cal., 281–291; *Morrison v. Wilson*, 13 Cal., 498; *Landers v. Bolton*, 26 Cal., 408; *Ewald v. Corbett*, 32 Cal., 493; *Mc-Leran v. Benton*, 43 Cal., 467. See also the following cases: *Hepburn v. Dubois*, 12 Peters, 345; *Meegan v. Boyle*, 19 How., 130; *Glidden v. Struple*, 52 Pa. St. R.; 400; *Heaton v. Fryberger*, 38 Iowa, 185; *Willis v. Gattman*, 53: Miss., 721; *Lindley v. Smith*, 46 Ills., 523; *Lane v. Dolick*, 6 McLean, 200.)

It was contended for the appellant, that even if these deeds were not legally acknowledged, they amounted to a contract on her part to convey; but this precise question was before the court in the case of *Martin v. Dwelly*, 6 Wend. Rep., 13, to-wit: whether a deed executed jointly with her husband, but not acknowledged pursuant to the statute, was valid against the *feme covert*, as an agreement to convey. In that case it was contended that a court of equity would consider it as an agreement to convey, and if it was shown to have been voluntarily made, for a valuable consideration, would compel the wife or her heirs specifically to perform it. This doctrine was, however, repudiated by the court as unsound in principle, and unsupported by any color of authority. But, in the present case, the fourteenth finding discloses the fact that "the plaintiff has never received any consideration for the said conveyances, or either of them, save the promise by said Todd to convey to her some lots in the city of Yankton of equal or greater value, but which lots were not designated by said Todd, nor was there any agreement as to what or how many lots were to be conveyed." And the tenth

finding shows that it was "at the instance of said J..B. S. Todd," that the plaintiff "executed and delivered the two deeds to defendant, Obed Foote;" nor were these defective acknowledgments cured by the act of January 6th, 1873. From all which considerations it is manifest that the district court did not err in concluding that, as between the parties to this action, the two deeds from the plaintiff to the defendant, of date May 7th, 1866, passed no estate from her to the defendant.

The third main inquiry relates to the validity of the tax deed executed by the treasurer of the city of Yankton to the defendant, and dated February 19th, 1876. On this subject there are seven findings—from the sixteenth to the twenty-second, inclusive. The city of Yankton assessed the lands in controversy for city taxes, for the year 1873, and levied taxes thereon amounting to four dollars and eighty cents, in the name of the defendant, Foote, and said taxes not having been paid the lands were sold by the city treasurer for such taxes, at the sale which took place in February, 1874, to Woolley & Ward; and not having been redeemed from such sale, and the defendant having become the owner of the certificate of sale, the tax deed was, on February 19th, 1876, executed and delivered to the defendant.

By the act of the Legislative Assembly of January 8th, 1873, incorporating the city of Yankton, the mayor and council were authorized by Section 13, "to levy and collect taxes for general purposes, not exceeding two mills on the dollar in any one year, on all the property within the limits of the city, taxable according to the laws of the Territory, the valuation of such property to be taken from the assessment roll of Yankton county; and it shall be the duty of the county clerk of said Yankton county to permit the city clerk to make out from the assessment rolls of the county an assessment roll for the city, of all property liable to taxation as above specified."

They were also empowered by the same act, Section 13, "to provide for the sale of real estate for the non-payment of taxes due thereon, and for the time and manner of redemption of the same, and conveyance thereof, provided that the owner may redeem the same within two years," etc.

Accordingly, on the 18th day of August, 1873, an ordinance was passed by the mayor and council, entitled "An ordinance relating to the levy and collection of taxes for city purposes," which was amended on January 27th, 1874, by changing the time of sale from the second Monday of February to the third Monday of that month, of each year, and expressly providing that the sale shall take place on the third Monday of February of each year. The provisions of the ordinance, so far as they relate to this action, and for the purpose of determining it, are set out in the findings.

Section 13 of the ordinance seems to have been framed from section 58 of the general revenue act of 1869, and the notice of sale in the latter must be for three weeks previous to the sale. As to publication, the evident intention was to make the ordinance correspond with the general law in such respect. From all the light before us we cannot construe publication for "at least once a week for three consecutive weeks preceding the sale" to mean anything else than publication for three weeks, (or twenty-one days) previous to the day advertised for the sale. The sale was advertised to take place on the sixteenth day of February, the third Monday.

As to what the notice of sale shall contain, there is a difference between the statute and the ordinance. The latter declares that the notice must "contain a notification that all real estate, the taxes on which are then delinquent and unpaid, will be sold to pay such taxes, and all taxes due thereon from the owner or holder of such real estate; and it shall specify the time and place of sale, and contain a list of the real estate to be sold, and the amount of city taxes due thereon, and on each lot, part of lot, or parcel of real estate, respectively." But the twenty-first finding shows that the property was all advertised and sold, including all of three subdivisions as one parcel, and was so advertised and sold as the property of the defendant, Foote, for five dollars and fourteen cents.

By the twentieth finding of fact it is shown that the city treasurer did not make and file with the city clerk such return of sale as is prescribed by section 16 of the ordinance. This section was evidently framed from section 62 of the general revenue act, but

it differs from the latter in essential particulars. The statute referring to the return of sale employs the words "showing the lands sold;" the ordinance goes further, and uses these terms, to-wit: "showing the lots or parcels of real estate sold, the names of the purchasers, and the sums paid by each for each lot or parcel of real estate respectively," etc.

It is a principle of law that on the execution of a power the execution must have reference to the power itself, and that a person claiming under the execution takes under the deed by which the power is created; and it is not by the mere execution and delivery of a deed, but a deed based upon the necessary prerequisite acts by which it became lawful to sell the land which it conveys, that a title alone can be created in the purchaser. It would at once seem to be requisite to the validity of the city treasurer's deed that it should recite the power under which it is made, and it should recite the acts of compliance with the ordinance which preceded the making of the deed.

Considerations like these must have operated in the framing of the ordinance—for, unlike the revenue act of 1869, which prescribes a form of deed, section 21 of the ordinance, discarding a form, declares that the conveyance "shall also recite the powers under which the same was made, and show a compliance with all the provisions of the statute by which the power was created, and with this ordinance."

As disclosed by inspection of the instrument, and by the findings, the court below was correct in concluding that the treasurer's deed does not contain the recitals required by the ordinance, and does not show a compliance with it.

There is another matter in this connection which must not be omitted. In 1873, when this land was listed and assessed in the name of the defendant, he had upon the record the three deeds named, and thereby notified all the world that he claimed to be the true owner, and the holder or possessor thereof. He had thus publicly held the property, asserting ownership, for seven years. Under the system then in force it is presumable that he was thus assessed either by his own act or that of an agent, but at all events he had placed himself in the position of one inviting and assum-

ing a share of taxation.   In this attitude, if he acted in good faith, he took upon himself at the time, the obligation to pay, and it was his duty to do so.

In *Bassett and Wife v. Welch*, 22 Wis., 176, it was held that one who is in possession of land claiming title at the time when taxes accrue thereon, which are assessed against him, is bound to pay them, and if he allows the land to be sold, and afterwards takes an assignment of the certificate, *that will be a payment*, and a deed taken by him thereon will confer no title as against the true owner. (See also *Whitney et al v. Gunderson*, 31 Wis., 378.)   The lands were listed and assessed in his own name, and he was the holder thereof, and thus claiming, by deeds recorded for seven years, and permitting an assessment in this manner, he should be estopped from denying a then assumed obligation to pay the taxes.

In the case of *Barretts v. Amerein*, in 36 Cal. R., 322, it was held that if a person is in possession of land, claiming the same to be his own, it is his duty to pay the taxes, although he has no paper title and is a trespasser, and that, under such circumstances, he cannot acquire an outstanding title by neglecting to pay the taxes, and allowing the land to be sold for the same, and purchasing at the sale.

In *Garwood v. Hastings*, 38 Cal., 217, the doctrine is asserted that it is the duty of such person, against whom the tax is levied, to pay it.    (See *Kelsey v. Abbott*, 13 Cal., 609; *Moss v. Shear*, 25 id., 38; *McMinn v. Whelan*, 27 id., 300; *Coppinger v. Rice*, 33 id., 425; *Riley v. Lancaster*, 39 id., 357.)

It may admit of much doubt whether the deed was not invalid on its face for another reason.    The amended ordinance, as has been stated, declares that the sale *shall take place* on the third Monday of February.    But the deed shows that the sale did not take place on that day, but on a subsequent day, and it contains no recitals explaining the disregard of the day designated by the ordinance, and the selection of a different day.   It does not recite any offer publicly to sell on the day positively fixed, and is silent as to any lawful adjournment, if any there was.    (*Williams v. Kirtland*, 13 Wall., 309; *French v. Edwards*, 13 id., 506.)

By the ninth conclusion of law of the District Court (based on the twenty-second finding) the defendant and appellant is at liberty to take from the clerk the sixty-nine dollars and eight cents paid over to him by the treasurer (the money paid by plaintiff to the treasurer) to redeem said lands from the city taxes. The court below decided that the said treasurer's deed is inoperative and void, and on review of all the proceedings in relation thereto no error is discovered in such conclusion.

Whether the husband, Charles Wambole, acquired any interest or estate in the lands by virtue of his marriage to the plaintiff in 1865, and if so, what effect was produced by his joining in the two deeds of May, 1866, are questions which are not in this case, and which must remain undetermined until they properly arise. The judgment herein in no manner or form affects these questions.

The appeal, in this case, was taken only from the judgment, and the notice contains no mention of the order denying a new trial. It is true that, upon appeal from a judgment, this court has authority to review any intermediate order, ruling or decision involving the merits and necessarily affecting the judgment, but does this power of itself include any other matters of review than at common law? By the latter rule a new trial was discretionary only in the trial court, and the granting or refusing it was not a subject of exception in error. (*Ins. Co. v. Barton*, 13 Wallace, 603.) To extend the remedy was the object, it would seem, of that portion of subdivision 2, § 22 of the Code, which specifically provides for an appeal from an order in new trials. It is thus, in and of itself, a subject of appeal. Was it not intended that if a party feels himself aggrieved by such ruling he should say so, and appeal accordingly, in order to a correction of findings, or verdicts, alleged to be unsustained by the evidence? In other words, will this court review the evidence in a case apart from the findings, unless in the mode expressly prescribed, to-wit: by appeal from the order? (8 Cal., 538; 1 Code, R. N. S., 364.) But, however this may be, and without deciding the point at present, it is sufficient to say that, upon examination, no errors in the findings of fact, material to the issues, are discovered.

As between the parties to this action, upon full and careful review of the assignments of error, the judgment or decree of the District Court of Yankton county must be

AFFIRMED.*

---

* As to tax deeds, see generally, Williams v. Peyton, 4 Wheat., 78; Thatcher v. Powell, 6 Wheat., 119; Ronkendoaff v. Taylor, 4 Peters, 349; Atvord v. Collin, 20 Pick., 418; Jackson v. Shepard, 7 Cow., 88; Harrington v. Worcester, 6 Allen, 576; Abell v. Cross, 17 Iowa, 176; Conway v. Cable, 37 Ills., 88; Morton v. Reeds, 6 Mo., 64; Ballance v. Forsyth, 13 How., 18; Games v. Stiles, 14 Peters, 322; Pillow v. Roberts, 13 How., 475; Blackw. Tax Titles, 47, and cases cited; Blackw. Tax Titles, 93, 94, 104, 531; Ferris v. Coover, 10 Cal., 589; Kelsey v. Abbott, 13 Cal., 609; Stewart v. McSweeney, 14 Wis., 472; Groesbeck v. Seeley, 13 Mich., 340; Wright v. Dunham, 13 Mich., 414; Atkins v. Kinnan, 20 Wend., 241; Smith v. Hileman, 1 Scamm., 323; Brown v. Veazie, 25 Me., 359; Langton v. Poor, 20 Verm., 13.